# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**In Re: L.B., M.B., D.B., D.B, & W.E.**

**No. 14-0906** (Webster County 13-JA-55 through 13-JA-59)

**FILED**

May 18, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother P.B., by counsel Daniel R. Grindo, appeals the Circuit Court of Webster County's August 13, 2014, order terminating her parental rights to L.B., M.B., D.B.-1, D.B.-2, and W.E.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Christopher Dodrill, filed its response in support of the circuit court's order. The guardian ad litem for the children ("guardian"), Mary Elizabeth Snead, filed a response on behalf of the children supporting the circuit court's order. On appeal, petitioner argues that the circuit court erred in finding (1) that there was no reasonable likelihood that she could substantially correct the conditions of neglect and (2) that termination was in the children's best interests.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In August of 2013, the DHHR filed an abuse and neglect petition against petitioner alleging that she exposed the children to unsuitable housing conditions.[2] According to the petition, the home had "garbage piled up extensively throughout"; dog feces on the floors, which the children were observed trying to "clean" with their bare hands; blood from rotted meat and other spoiled food in the refrigerator, with very little edible food in the home; and an odor of garbage and urine that "was strong enough to burn the investigators [sic] eyes and make breathing in the home difficult[.]" At the September 5, 2013, adjudicatory hearing, petitioner stipulated to most of the allegations in the petition as to the condition of her home. Based upon her stipulations, the circuit court found that petitioner neglected her children.

In October of 2013, the circuit court held a dispositional hearing. Petitioner testified that she had begun to clean and repair the home, but it remained incomplete. She also still owned

---

[1]Because two children share the same initials, the Court will refer to these children as D.B.-1 and D.B.-2. The circuit court case numbers also serve to distinguish these children.

[2]The petition also set forth allegations against the father of L.B., M.B., D.B.-1, and D.B.-2 and the father of W.E., but the parental rights of those fathers are not at issue in this appeal.

four dogs, two cats, and two horses. Further, petitioner could not explain how she spent her income from multiple sources given that she paid no rent, cable, water, or sewer expenses in her home, and the DHHR had covered her utility expenses for some time. Child Protective Services ("CPS") worker Patricia Myers testified that petitioner refused to follow through with the recommendation that she prepare menus within her budget and said that she could not afford to provide food during her visits with the children. Testimony further established that the home remained uninhabitable with dog feces still present on the floor, piled clothes, broken windows, and an exposed stove pipe dangerously close to the ceiling. Although expressing reservations with petitioner's lack of progress, Ms. Myers recommended that petitioner receive an improvement period, which the circuit court reluctantly granted. The improvement period included therapy and adult life skills and parenting classes; these classes included budgeting skills and home maintenance. Importantly, the circuit court specifically required that the home be habitable within sixty days.

In March of 2014, the circuit court held a hearing on the DHHR's motion to revoke petitioner's improvement period and terminate her parental rights. Petitioner testified to her efforts to correct the conditions in the home, including corrections to one window and the stove pipe's proximity to the ceiling, but she admitted that additional problems persisted, including other broken windows, difficulty with her heater, and a lack of running water. The DHHR-contracted service provider, Lori Pierce, testified that, despite extensive services, petitioner had not complied with Ms. Pierce request to see her monthly bills, and the home still contained dog feces, broken windows, and an uncaged, live chicken. Ms. Pierce concluded that petitioner made no major progress in her services, despite recent efforts. After taking the DHHR's motion under advisement, the circuit court ultimately set the matter for a third dispositional hearing and ordered the DHHR to conduct weekly home visits to review petitioner's progress.

In May of 2014, the circuit court held its third dispositional hearing. The DHHR called multiple CPS workers and other providers who testified that, despite petitioner's efforts to improve its conditions, her home remained unsuitable for children. According to the testimony, her home still lacked running water, and much of petitioner's furniture, including the refrigerator, had been repossessed. The circuit court again took the DHHR's motion under advisement, and it granted petitioner additional time to address the remaining conditions of her home, specifically her lack of running, or even potable, water.

In July of 2014, the circuit court held a final dispositional hearing. Testimony established that petitioner attempted to renovate a water tank existing on the property. The DHHR called a Webster County sanitary worker who testified to the results of water testing performed on the water available through that tank. The sanitary worker explained that the water tested positive for coliforms and E. Coli, which are not safe for human consumption, and the current system would require a purification process to make potable water. Testimony further established that dog feces remained throughout the home and that petitioner had recently been convicted for misdemeanor animal cruelty, which she admitted. Despite petitioner's efforts to provide suitable housing "real soon," the guardian joined in the DHHR's motion to terminate petitioner's parental rights in order to achieve permanency for the children. Based upon the evidence presented throughout these proceedings, the circuit court terminated petitioner's parental rights. It is from that order that petitioner now appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). With that standard in mind, we turn to petitioner's assignments of error.

On appeal, petitioner first argues that the circuit court erred in finding that there was no reasonable likelihood that she could substantially correct the conditions of abuse and neglect. Pursuant to West Virginia Code § 49-6-5(b)(3), a respondent parent's failure to respond or follow through with a reasonable family case plan or other rehabilitative efforts constitutes circumstances in which there is no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected. Further, West Virginia Code § 49-6-5(a)(6) expressly provides for termination "upon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and when necessary for the child's welfare. The record clearly demonstrates that petitioner failed to follow through with rehabilitative efforts. Throughout the proceedings below, the circuit court heard evidence of dog feces present in petitioner's home on multiple occasions; no running water or access to clean, potable water; the need for significant repairs to the home; and contaminated water in her proposed water system. One DHHR employee testified that these conditions persisted approximately eleven months after the petition's filing. Ultimately, petitioner had more than eleven months to substantially correct the neglectful conditions present in her home, but she failed to do so. Although petitioner argues, and it is uncontested, that she completed several repairs to her home, the circuit court did not err in finding that a home with dog feces and no running water is not fit, apt, and suitable for children. As such, we find no error in the circuit court's ruling that there was no reasonable likelihood that petitioner could substantially correct the conditions of neglect in the near future.

Finally, petitioner argues that the circuit court erred in finding that termination was in the children's best interests. We have held that "'[a]lthough parents have substantial rights that must be protected, the primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children.' Syl. Pt. 3, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996)." Syl. Pt. 2, *In re Timber M.*, 231 W.Va. 44, 743 S.E .2d 352 (2013). *See also*

*Michael K.T. v. Tina L.T.*, 182 W.Va. 399, 405, 387 S.E.2d 866, 872 (1989) ("[T]he best interests of the child[ren] is the polar star by which decisions must be made which affect children.") (citations omitted). In this case, while petitioner maintains that the circuit court failed to consider the bond she had with the children, the record is clear that the children remained in foster care for approximately eleven months, between the initial removal and the final dispositional hearing, while petitioner failed to substantially correct the conditions at issue in her home. Even at the time of the final dispositional hearing, petitioner could provide no set time in which she would provide a suitable home for these children, except to state that she hoped it would be "real soon." Upon our careful review of the record on appeal, we find no error in the circuit court's ruling that termination was in the children's best interests to achieve permanency.

Therefore, the circuit court did not err in terminating petitioner's parental rights. Given the facts of this case, there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future, and termination was necessary for the children's welfare and in the children's best interests. Pursuant to West Virginia Code § 49-6-5(a)(6), circuit courts are directed to terminate parental rights upon such findings.

The circuit court's August 13, 2014, order is hereby affirmed.

Affirmed.


**ISSUED**: May 18, 2015

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II

4