# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**In Re: K.B., B.B., N.B., P.B., & S.B.**

**No. 14-0910** (Calhoun County 14-JA-12 through 14-JA-16)

**FILED**

May 18, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother, by counsel Teresa C. Monk, appeals the Circuit Court of Calhoun County's August 13, 2014, order terminating her parental rights to K.B., B.B., N.B., P.B., and S.B.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Katherine M. Bond, filed its response in support of the circuit court's order. The guardian ad litem for the children ("guardian"), Erica Brannon Gunn, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner alleges that the circuit court erred in denying her motion for an improvement period and in terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In February of 2014, the DHHR filed an abuse and neglect petition against petitioner.[2] According to the petition, the children's babysitter found then four-year-old K.B. touching her vaginal area, and when asked to explain this conduct, K.B. stated that the father of P.B. and S.B. ("boyfriend")[3] licked her there on multiple occasions. The petition alleged that petitioner failed to remove the children or her boyfriend from the home following the sexual abuse disclosure; that she waited several days following the sexual abuse disclosure to take K.B. to the hospital for a physical examination; that she committed domestic violence in the children's presence; that the

---

[1]Petitioner has eight biological children; it is uncontested that, due to a Child Protective Services ("CPS") action in the state of Ohio, she lost custody to three of her children. Petitioner's parental rights to those three children are not at issue in this appeal.

[2]The petition, and a later amended version thereof, also included allegations against the father of K.B., B.B., and N.B., and the father of P.B. and S.B.

[3]The relationship between petitioner and the father of P.B. and S.B. is unclear from the record on appeal. In the record and in the briefing before this Court, he is referred to at different times as her "boyfriend," her "fiancé," and her "ex-fiancé." For both brevity and consistency, we refer to him throughout this memorandum decision as petitioner's "boyfriend."

1

children were inappropriately disciplined with a belt while under her care; and that she had a history of Child Protective Services ("CPS") involvement in the State of Ohio.

In April of 2014, the circuit court held the adjudicatory hearing. Petitioner stipulated that she repeatedly and excessively questioned K.B. in an attempt to coach her to alter her allegations of sexual abuse; that she failed to protect the children from her boyfriend's sexual abuse and inappropriate discipline with a belt; that she knowingly permitted the children to remain in the home following the sexual abuse disclosure; and that she engaged in domestic violence in the children's presence. The circuit court found that petitioner abused and neglected the children.

Between May and July of 2014, the circuit court held four dispositional hearings. The DHHR presented the testimony of several witnesses, including Michael Smith, a supervisor with White Medical Services, who testified to petitioner's extensive CPS history in Ohio and West Virginia. Mr. Smith explained that petitioner failed to complete services under a voluntary case plan in the Ohio CPS action, and, due to the incomplete case plan, the Ohio court transferred custody of her three oldest children to their maternal grandmother. Dr. Timothy Saar testified that K.B. exhibited developmental delays and sexualized behavior and that B.B. exhibited withdrawn and depressive behavior. One of the foster parents also testified as to K.B.'s developmental delays in speech and her sexualized behavior. It was uncontested that petitioner completed only one visit with the children, during which the children, particularly B.B., exhibited negative behaviors. Prior to the circuit court's dispositional ruling, petitioner moved for an improvement period. The circuit court denied that motion, and it terminated petitioner's parental rights to the five children at issue here. It is from that order that petitioner now appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). With that standard in mind, we turn to petitioner's assignments of error.

On appeal, petitioner first assigns error to the circuit court's denial of her motion for an improvement period. We have explained that West Virginia Code §§ 49-6-12(b), 49-6-12(c), and 49-6-5(c) grant circuit courts discretion in determining whether to permit improvement periods

in abuse and neglect proceedings. West Virginia Code §§ 49-6-12(b) and -12(c) require a parent to prove by clear and convincing evidence that they are likely to fully participate in the same, and West Virginia Code § 49-6-5(c) permits a circuit court to grant an improvement period as an alternative disposition. However, we have been clear that "[t]ermination . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected." Syl. Pt. 7, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996). We have also held that "courts are not required to exhaust every speculative possibility of parental improvement before terminating parental rights where it appears that the welfare of the child will be seriously threatened ..." Syl. Pt. 1, in part, *In Re: R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980). Although petitioner argues that the circuit court erred because the conditions of abuse and neglect were "easily correctible" and she was willing to cooperate with the DHHR, we find no error in the circuit court's denial of her motion for an improvement period.

In this case, the record on appeal clearly supports that the circuit court was within its sound discretion in denying petitioner an improvement period. Petitioner previously failed to comply with services in the Ohio CPS action, resulting in a custody transfer of three of her older children to her mother. In addition to her history of noncompliance with services, the circuit court found that she did not warrant an improvement period because the acts she committed against the children were "so egregious." West Virginia Code § 49-6-5(a)(7)(A) states, in relevant part, that "the [DHHR] is not required to make reasonable efforts to preserve the family if the court determines . . . [t]he parent has subjected the child, another child of the parent or any other child residing in the same household . . . to aggravated circumstances which include, but are not limited to . . . sexual abuse." As explained above, petitioner admitted that she repeatedly and excessively attempted to coach K.B. to alter her sexual abuse allegations; that she was violent in the children's presence; and that she knowingly failed to protect the children from physical and sexual abuse. Despite her assertion on appeal that "[a]fter she found out that the abuse was taking place she kicked [her boyfriend] out of the residence and broke off her relations with [him]," she admitted at the adjudicatory hearing in this matter that she "knowingly allowed [her boyfriend] to remain in the family home after [K.B.] made the disclosure about sexual abuse."[4] As her attorney stated at that hearing, she admitted that "even knowing the allegations, she allowed [the boyfriend] to stay in the home and would further admit that she even left the two little girls [. . .] with [him] while she had [K.B.] in the hospital having her checked out." Based on the foregoing, the circuit court heard sufficient evidence to deny an improvement period.

Petitioner's second and final assignment of error is that the evidence did not support termination of her parental rights. West Virginia Code § 49-6-5(a)(6) requires termination of parental rights when there is no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected in the near future and when necessary for the welfare of the children.

---

[4]While it is uncontested that petitioner took K.B. to the hospital for a physical examination for sexual contact, a fact upon which petitioner places great weight in her arguments to this Court, it is also uncontested that she did not do so for three days following the initial disclosure. During that time, she permitted the children to remain in the home with her boyfriend.

Pursuant to West Virginia Code § 49-6-5(b), no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected means that "the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." Such conditions exist when:

> The abusing parent or parents have . . . seriously injured the child physically or emotionally, or have sexually abused or sexually exploited the child, and the degree of family stress and the potential for further abuse and neglect are so great as to preclude the use of resources to mitigate or resolve family problems[.]

*Id*. at § 49-6-5(b)(5). Under the circumstances presented in this case, the circuit court did not err in finding that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected in the near future and the children's welfare necessitated termination. Petitioner knowingly abused and neglected her children by failing to protect them from physical and sexual abuse. According to the testimony of Dr. Saar and a foster parent, the children exhibited sexualized conduct, developmental delays, behavioral problems, and were withdrawn and depressed.

Furthermore, despite her arguments on appeal that she "removed the danger," petitioner admitted that she allowed her boyfriend to remain in the home without removing the children following the initial disclosure, going so far as to leave two young girls alone in the home with him. She also attempted to coach K.B. to alter her story, had a history of noncompliance in the Ohio CPS action, and there were numerous reports that these children have acted out and become emotionally withdrawn and depressed. The circuit court did not err in finding that petitioner demonstrated an inadequate capacity to solve the problems that led to the conditions of abuse and neglect. The evidence presented was sufficient for the circuit court to find that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect and that termination of her parental rights was necessary for the children's well-being. The evidence supported the finding that the children were, at a minimum, seriously emotionally injured, and the degree of family stress and the potential for further abuse precludes reunification.

Therefore, we find no error in the decision of the circuit court, and its August 13, 2014, order is hereby affirmed.

Affirmed.

**ISSUED**: May 18, 2015

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II