# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re*: **J.M.**

**No. 15-0893** (Summers County 14-JA-24)

**FILED**

**April 12, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother H.S., by counsel Ryan H. Keesee, appeals the Circuit Court of Summers County's August 21, 2015, order terminating her parental rights to J.M. The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Christopher S. Dodrill, filed its response in support of the circuit court's order and a supplemental appendix. The guardian ad litem ("guardian"), Martha J. Fleshman, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner raises two grounds. First, petitioner argues that the circuit court erred in denying her motion for an extension of her post-adjudicatory improvement period.[1] Second, she claims that the circuit court erred in terminating her parental rights to the child. Following a thorough review, we find no error in the circuit court's August 21, 2015, order.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In October of 2014, the DHHR filed an abuse and neglect petition against petitioner and the child's father. In that petition, the DHHR alleged that it received a referral on October 17,

---

[1] In her brief to this Court, petitioner refers to the denial of her motion for a "renewed" post-adjudicatory improvement period. However, she cites no portion of the record on appeal containing a motion for a "renewed" improvement period, and she fails to cite any authority in West Virginia's child abuse and neglect jurisprudence allowing for a "renewed" improvement period. It appears that petitioner intended to appeal the denial of her motion for an *extension* of her post-adjudicatory improvement period in March of 2015, and we review the contention as such.

[2] We note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective ninety days after the February 19, 2015, approval date. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below.

1

2014, that petitioner's then three-year-old child was found playing in a "busy alley" without supervision and while wearing only a diaper. The DHHR further alleged that a child protective services ("CPS") worker arrived on October 17, 2014, to find the child with petitioner's neighbors, who removed the child from the alley. According to the DHHR, the CPS worker also found that broken glass and debris were littered about the outside of the residence; that petitioner and the child's father were asleep inside the residence and difficult to waken; that ants were seen crawling on dirty dishes in the kitchen sink and countertop; that the refrigerator was dirty and had little food; that the child slept on a bare mattress on the floor in the living room and had no toys; that a witness observed the child's father kick the child "across the room" and observed both parents "snorting pain pills" resulting in a general neglect of the child when they did so. The DHHR also noted in its petition that petitioner tested in the vocabulary level of a nine-year-old.

In December of 2014, the circuit court held an adjudicatory hearing. Petitioner stipulated to the allegations in the petition. Based on that stipulation, the circuit court found that petitioner was an abusing parent and that the child was an abused and neglected child. Thereafter, petitioner moved for a post-adjudicatory improvement period, which the circuit court granted. Among the terms of the improvement period, petitioner was directed to submit to random drug screens; to participate in parenting and adult life skills classes; and to submit to a psychological parental fitness evaluation.

In January of 2015, petitioner underwent a psychological evaluation with Dr. L. Andrew Steward, Ph.D. In his psychological report, Dr. Steward indicated that petitioner, who had two sons, had a history of CPS involvement, with eleven referrals to that agency between 2006 and 2014. According to the psychological report, those referrals included allegations of child malnutrition; poor child hygiene; inadequate housing; petitioner having a child with a registered sex offender, whom she allowed to change the child's diaper; and an incident wherein the oldest child, then four years old, was allegedly scalded in a bathtub when petitioner left that child in the bathtub unattended to speak with a visitor in the home. Dr. Steward also noted petitioner's criminal history, which included charges of animal cruelty and domestic violence. Dr. Steward then testified about the tests he performed on petitioner to analyze her social and cognitive functioning. According to Dr. Steward, the results of that testing showed that petitioner functioned "in the Mild Intellectual Disability range and would have difficulty intellectually caring for" the child. In sum, he concluded in his report "that [petitioner] could not effectively take care of children independently and this indeed would be precarious for" the child.

Petitioner failed to provide any drug screens from February to April of 2015. In March of 2015, the circuit court held a review hearing in this matter. At this hearing, petitioner moved for an extension of her post-adjudicatory improvement period. The DHHR opposed petitioner's motion based on Dr. Steward's psychological report. At the conclusion of the hearing, the circuit court denied petitioner's motion and scheduled a dispositional hearing.

In May of 2015, the circuit court held a dispositional hearing. A DHHR worker, a service provider, and Dr. Steward testified as to petitioner's history, current parenting abilities, and conduct during the proceedings. The DHHR worker testified that petitioner failed to demonstrate that she could properly parent the child. When questioned on cross-examination whether the DHHR's position was based solely on petitioner's psychological evaluation and intellectual

ability, the DHHR worker stated that it was "[n]ot just based on that, but based on everything." The DHHR worker explained that the psychological evaluation provided part of the DHHR's concern, but the service providers also provided reports on petitioner's failure to progress during her required services. Thereafter, the service provider testified that petitioner attended parenting and adult life skills classes, but she failed in "actually gaining and putting to use" what was taught. The service provider explained that she did not "feel like anything is being internalized at this point." Dr. Steward testified to the findings and conclusions in his report, but he specifically noted that an intellectual disability alone does not prohibit a person from being an adequate parent. Dr. Steward explained that all of the circumstances of a person's parenting must be considered in evaluating parental fitness. Here, Dr. Steward noted that petitioner's failure to provide adequate supervision for the child is one such contributing factor to determine total parental fitness. He concluded that no rehabilitative services could be provided to petitioner to correct the conditions that led to the neglect. Based on the evidence presented, by order entered on August 21, 2015, the circuit court terminated petitioner's parental rights to the child. This appeal followed.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

Petitioner first claims that the circuit court erred in denying her motion for an extension of her post-adjudicatory improvement period. West Virginia Code § 49-6-12(g) provides as follows:

A court may extend [an] improvement period . . . for a period not to exceed three months when the court finds that the [subject parent] has substantially complied with the terms of the improvement period; that the continuation of the improvement period will not substantially impair the ability of the [DHHR] to permanently place the child; and that such extension is otherwise consistent with the best interest of the child.

3

In support of her position, petitioner claims that "some progress had been made" during her improvement period due to her attendance in parenting and adult life skills classes and her negative drug screens. However, our review of the record reveals that petitioner did not substantially comply with her improvement period. First, even under petitioner's categorization of her efforts, "some progress" clearly fails to satisfy the requirement that she substantially comply with the terms of her improvement period. Second, notwithstanding her attendance at the subject classes, the testimony before the circuit court demonstrates that petitioner failed to "internalize" and apply the principles taught in those classes. Moreover, petitioner failed to submit to required drug screens for approximately two months of her improvement period. Without proof of substantial compliance with her post-adjudicatory improvement period, we find that an extension of those efforts was unwarranted. As such, we find no merit to this assignment of error.

Petitioner's second contention is that the circuit court erred in terminating her parental rights to the child. Pursuant to West Virginia Code § 49-6-5(a)(6), circuit courts are directed to terminate parental rights upon findings that there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected in the near future and when necessary for the child's welfare. West Virginia Code § 49-6-5(b) provides that no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected exists when "[t]he abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts[.]" We have also held that "[t]ermination . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected." Syl. Pt. 7, in part, *In re Katie S*., 198 W.Va. 79, 479 S.E.2d 589 (1996).

Here, while petitioner argues that the circuit court's ruling relied solely on her intellectual ability to parent, as reported by Dr. Steward, it is clear that the circuit court relied on other evidence to support its termination order. Petitioner failed to submit to required drug screens for a prolonged period in this matter. Petitioner's service provider specifically testified that petitioner had not internalized the lessons provided, and Dr. Steward testified that, based on the circumstances, no rehabilitative services could be provided to her that would achieve the desired results. Petitioner admitted to child neglect due to her inadequate care for and lack of supervision of the child. Thereafter, she was provided with an improvement period in order to substantially correct those issues. She failed to do so. The evidence supports the finding that petitioner failed to follow through with reasonable rehabilitative efforts in this case.

Moreover, to the extent the circuit court considered petitioner's intellectual capacity, this Court has held that termination may occur on such allegations in certain circumstances. In Syllabus Point 4 of *In re Billy Joe M*., 206 W.Va. 1, 521 S.E.2d 173 (1999), this Court explained as follows:

> [w]here allegations of neglect are made against parents based on intellectual incapacity of such parent(s) and their consequent inability to adequately care for their children, termination of rights should occur only after the social services system makes a thorough effort to determine whether the parent(s) can adequately care for the children with intensive long-term assistance. In such

case, however, the determination of whether the parents can function with such assistance should be made as soon as possible in order to maximize the child(ren)'s chances for a permanent placement.

While long-term assistance must generally be considered in such cases, the testimony in this case revealed that any such long-term assistance would be unable to correct the issues presented.

Based on the circumstances of this case, we find no error in the circuit court's termination of petitioner's parental rights. The evidence presented below supports the findings that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future, and that termination was necessary for the child's welfare. Pursuant to West Virginia Code § 49-6-5(a)(6), circuit courts are directed to terminate parental rights upon such findings.

For the foregoing reasons, the circuit court's August 21, 2015, termination order is hereby affirmed.

Affirmed.

**ISSUED**:  **April 12, 2016**

**CONCURRED IN BY**:


Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II