# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**FILED**

**April 12, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re*: **J.B.**

**No. 15-1096** (Kanawha County 14-JA-33)

## MEMORANDUM DECISION

Petitioner Father N.B., by counsel Kevin P. Davis, appeals the Circuit Court of Kanawha County's October 28, 2015, order terminating his parental rights to four-year-old J.B.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed its response in support of the circuit court's order. The guardian ad litem ("guardian"), Rebecca Stollar Johnson, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his dispositional improvement period and his parental rights to the child.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In February of 2014, the DHHR filed an abuse and neglect petition against the child's mother and petitioner. In that petition, the DHHR alleged that the child's mother used drugs and had recently overdosed; that the child was often dirty and not dressed appropriately for the weather; that the home was dirty and had a roach infestation; and that neighbors often fed and babysat the child. The DHHR noted in the petition that petitioner was incarcerated at that time and could not provide for the child. Petitioner represents that he was incarcerated for approximately fourteen months, including the month of February of 2014, because he stole two televisions.

---

[1]The proceedings below concerned another child, E.F., who is not petitioner's biological child and who is not at issue in this appeal. As such, this memorandum decision concerns only petitioner's parental rights to his biological child, J.B.

[2]We note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective ninety days after the February 19, 2015, approval date. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below.

In May of 2014, the DHHR filed an amended abuse and neglect petition against petitioner. In its amended petition, the DHHR alleged that petitioner remained incarcerated and, therefore, had effectively abandoned the child. The circuit court held an adjudicatory hearing on the amended petition in September of 2014. At that hearing, petitioner stipulated to the allegation that he abandoned his child due to his incarceration. Thereafter, the circuit court granted petitioner a post-adjudicatory improvement period and supervised visitation at the Beckley Correctional Center. During this hearing, the child's mother was restricted from visiting with the child due to her continued drug use and non-compliance with parental services.

While the exact date is unclear from the record on appeal, petitioner was granted parole and released from incarceration at some time between September 8, 2014, and October of 2014. Upon his release, petitioner resided with his mother in Kanawha County, West Virginia. By October of 2014, due to his compliance with the terms of the improvement period, the supervision requirement was removed from petitioner's visits with the child.

However, by January of 2015, the DHHR was concerned that petitioner was residing with the child's mother due to comments made by the child to that effect. The child's mother remained under a court order that prohibited her from visiting with the child. At a review hearing held in February of 2015, based on the DHHR's recommendation, the circuit court granted petitioner an extension of his improvement period. The child remained in the DHHR's custody, but unsupervised visits between petitioner and the child continued.

In March of 2015, the DHHR filed a "status summary" in which it expressed concern that petitioner, during his unsupervised visits with the child, allowed the child's mother to exercise parenting time in violation of the circuit court's order. The DHHR further relayed its concerns that petitioner had missed visits with the child and may have begun using controlled substances.[3]

In June of 2015, police arrested petitioner and the child's mother together in an abandoned house on charges of burglary.[4] Having apparently been released thereafter,[5] petitioner was arrested and incarcerated for a violation of the terms of his parole in August of 2015. Petitioner's parole was ultimately revoked due to his criminal conduct in June of 2015. Petitioner was incarcerated throughout the remainder of the proceedings below.

---

[3]In April of 2015, the child's mother's parental rights were terminated to two children, including the child in this matter. On appeal, this Court affirmed the mother's termination of parental rights. *See In re: E.F. & J.B.*, No. 15-0833, 2016 WL 870572 (W.Va. Mar. 7, 2016) (memorandum decision).

[4]Those charges were ultimately lessened to trespassing. The disposition of those charges is unclear from the record on appeal.

[5]The parties relay in their briefs to this Court that petitioner was arrested twice in 2015— once in June for burglary and again in August for a parole violation. While the parties do not expressly indicate that petitioner was released from incarceration between his first and second arrest, the same is implied.

In September of 2015, the circuit court held a dispositional hearing. As noted above, petitioner remained incarcerated. The DHHR presented evidence of petitioner's arrest in June of 2015 and subsequent parole revocation and incarceration. Further evidence established that petitioner failed to obtain suitable housing during his improvement period and that the child returned from petitioner's visits with bug bites, which the DHHR was concerned may have been caused by bed bugs. During his testimony, petitioner admitted that he was with the child's mother when the two were arrested in June of 2015. However, he claimed that he did not know she would be in the abandoned "drug house" when he and his friend entered that location. Notwithstanding his description of the location as a "drug house," petitioner testified that he did not enter that location for the purpose of using drugs. On cross-examination, petitioner also stated that he had been arrested ten times in the last ten years and that he spent a "couple years" incarcerated during that period of time. The date of petitioner's release from prison was uncertain at the time of the dispositional hearing, but he claimed to anticipate his release on parole within three months. He further claimed that he missed a parole hearing scheduled on the same date as the dispositional hearing. Based on the evidence presented, the circuit court terminated petitioner's parental rights to the child. This appeal followed.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner's first assignment of error is that the circuit court erred in terminating his "dispositional improvement period." However, following a thorough review of the parties' briefs and the record submitted on appeal, we find no supporting evidence that petitioner moved for or received a dispositional improvement period at any time, nor that the circuit court terminated the same. We note that petitioner fails to direct this Court to the portion of the record on appeal containing any reference to a dispositional improvement period or the termination thereof, and the record before us is devoid of a certified docketing sheet, any motion for dispositional improvement period and responses, and any order with regard to a dispositional

improvement period.[6] Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requires that petitioner's argument in his brief to this Court "contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal." As we find no factual support for petitioner's argument in the record on appeal, we hereby find no merit to this assignment of error.

Petitioner's second assignment of error is that the circuit court erroneously terminated his parental rights based solely on his incarceration at the time of the dispositional hearing.[7] Pursuant to West Virginia Code § 49-4-604(6), circuit courts are directed to terminate parental rights upon findings that there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected in the near future and when necessary for the child's welfare. West Virginia Code § 49-4-604(c)(3) provides that no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected exists when "[t]he abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts[.]" We have also held that "[t]ermination . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected." Syl. Pt. 7, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996). Further, we have explained that incarceration may support the termination of parental rights based on the analysis of a series of factors. *See In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (holding that "[a]lthough we have not adopted a *per se* rule regarding the impact incarceration has on a termination of parental rights decision, we have likewise not said that the facts surrounding a parent's incarceration may never form the basis for terminating parental rights.").

Here, petitioner admitted that he abandoned his child due to his prolonged incarceration. While petitioner now claims that his incarceration alone could not result in the termination of his parental rights, it is clear that the circuit court based its ruling on additional factors. In this case, prior to his termination, petitioner began missing visits with the child. Further, the child claimed that petitioner allowed the child's mother to visit, which was in direct violation of the circuit court's order regarding her visitation due to her continued drug use. Moreover, petitioner found no suitable housing during his improvement period, and the child had bug bites when he returned from visits with petitioner. Finally, and importantly, petitioner was arrested with the child's mother in a "drug house" during an extension of his improvement period. Based on his then-status as a parolee, petitioner was incarcerated thereafter on a parole violation up to and including the time for his dispositional hearing. Notably, at the time of the dispositional hearing,

---

[6]Petitioner fails to direct this Court to any portion of the record on appeal containing a motion for a dispositional improvement period—either filed in writing or presented orally at a hearing in the proceedings below. We note that West Virginia Code § 49-4-610(3) requires a motion for a dispositional improvement period to be made in writing.

[7]Petitioner also argues that the DHHR "admits" that termination of his parental rights would not have been necessary if he could maintain employment, obtain suitable housing, and provide stability for the child. However, such an argument is of no import because it is clear that petitioner failed to maintain employment, obtain suitable housing, and provide stability for the child in this case.

4

petitioner had no scheduled date of release and no guarantee of release on parole. Given the circumstances presented, there was no reasonable likelihood that the conditions of neglect could be substantially corrected in the near future. Furthermore, the child required stability and permanency. As such, we find no error in the circuit court's termination of petitioner's parental rights herein.

For the foregoing reasons, the circuit court's October 28, 2015, termination order is hereby affirmed.

Affirmed.

**ISSUED**: **April 12, 2016**

**CONCURRED IN BY**:


Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II