# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **J.L.-1 and J.L.-2**

**No. 17-0829** (Mercer County 15-JA-034 and 15-JA- 035)

**FILED**

**February 23, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father J.L.-3, by counsel John E. Williams, Jr., appeals the Circuit Court of Mercer County's August 17, 2017, order terminating his parental, custodial, and guardianship rights to J.L.-1 and J.L.-2.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem ("guardian"), Catherine Bond Wallace, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred by denying him an extension of his post-dispositional improvement period.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In March of 2015, the DHHR filed an abuse and neglect petition against petitioner and the mother. The DHHR alleged that a Child Protective Services case was opened in January of

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because the children and petitioner share the same initials, we will refer to them as J.L.-1, J.L.-2, and J.L.-3 respectively, throughout this memorandum decision.

[2]On appeal, petitioner does not specifically challenge the circuit court's termination of his parental, custodial, or guardianship rights. Additionally, we note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective on May 20, 2015. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below. It is important to note, however, that the abuse and neglect statutes underwent minor stylistic revisions and the applicable changes have no impact on the Court's decision herein.

1

2015 after receiving reports of domestic violence in the home and drug abuse by the parents, who were observed to have "needle holes in the bends of their arms" from suspected intravenous drug abuse. The DHHR alleged that it had offered drug rehabilitation services and family preservation services but petitioner failed to cooperate and made no admission of wrongdoing. An amended petition was filed in April of 2015 in which the DHHR alleged that petitioner tested positive for several controlled substances and failed to cooperate in the development of a treatment plan. The amended petition also contained allegations that petitioner failed to provide for his children's financial, physical, social, and emotional needs. Petitioner waived his preliminary hearing.

The circuit court held an adjudicatory hearing in May of 2015, in which it adjudicated petitioner as an abusing parent. Petitioner was granted a post-adjudicatory improvement period in August of 2015. In September of 2015, petitioner was placed on home incarceration and entered a drug rehabilitation program.[3] He began consistently participating in visitation with the children and completed his psychological assessment. However, petitioner absconded from the rehabilitation program in December of 2015 and his whereabouts were unknown for several months. As such, petitioner did not comply with services, nor did he participate in visitation during that time.

In April of 2016, the circuit court held a review hearing during which it was advised that petitioner had recently been incarcerated for committing a crime in Virginia and also had pending charges in West Virginia. Petitioner entered an inpatient drug rehabilitation program in May of 2016 and his post-adjudicatory improvement period was extended in July of 2016, despite concerns that petitioner had begun dating a fellow drug addict at his rehabilitation program.

The circuit court granted petitioner a post-dispositional improvement period in September of 2016. However, he subsequently left his rehabilitation program without authorization in November or December of 2016 and moved to North Carolina in an attempt to avoid "consequences." During a multidisciplinary team ("MDT") meeting held in January of 2017, the DHHR informed petitioner that he failed his second attempt at a drug rehabilitation program and that it could not provide meaningful oversight or services to him while he was living in North Carolina. Petitioner informed the MDT that he would come to West Virginia on weekends for visits with the children. The DHHR noted that this was not an ideal arrangement as any drug screens would not be random. Another MDT meeting was held in March of 2017, during which petitioner reported that he was abstaining from drugs, employed, renting a residence in North Carolina, and receiving counseling from his pastor. Petitioner provided a negative drug screen following the meeting.

In May of 2017, the circuit court held a review hearing, after which petitioner provided a drug screen and tested positive for cocaine. The circuit court held another hearing in June of 2017, during which petitioner testified that he would test negative for drugs if tested. The circuit court ordered him to drug screen following the hearing and he tested positive for cocaine.

---

[3]The record is unclear as to why petitioner was placed on home incarceration.

The circuit court held a dispositional hearing in July of 2017. Petitioner was not present but was represented by counsel, who informed the circuit court that petitioner had been arrested for driving on a revoked license and texting while driving and was placed in a rehabilitation program. The circuit court noted its concern that petitioner continued to assert that he was drug-free but had left two rehabilitation programs and tested positive for cocaine as recently as the last hearing. The circuit court found that petitioner continued to struggle with drug addiction and that the children deserved permanency, as the case had been ongoing for over two years with no significant progress. Ultimately, the circuit court terminated petitioner's parental, custodial, and guardianship rights based upon findings that there was no reasonable likelihood that he could correct the conditions of abuse in the near future and that termination was necessary for the children's welfare.[4] It is from this dispositional order dated August 17, 2017, that petitioner appeals.

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in denying him an extension of his post-dispositional improvement period. According to petitioner, he successfully participated in supervised visits with the children, attended parenting and life skills classes, obtained proper housing and employment, and found a long-term rehabilitation facility for treatment. We disagree. Pursuant to West Virginia Code § 49-4-610(6), a circuit court

> may extend any improvement period granted . . . when the [circuit] court finds that the [parent] has substantially complied with the terms of the improvement period; that the continuation of the improvement period will not substantially

---

[4]In addition, the mother voluntarily relinquished her parental rights to the children during the proceedings below. The children are placed in a foster home with the permanency plan to be adopted therein.

impair the ability of the [DHHR] to permanently place the child; and that the extension is otherwise consistent with the best interest of the child.

Moreover, West Virginia Code § 49-4-610(9) sets forth that

no combination of any improvement periods or extensions thereto may cause a child to be in foster care more than fifteen months of the most recent twenty-two months, unless the court finds compelling circumstances by clear and convincing evidence that it is in the child's best interests to extend the time limits contained in this paragraph.

First, there is no indication in the record that petitioner ever requested an extension to his post-dispositional improvement period. Second, even if petitioner had requested an extension, he failed to show that he substantially complied with the terms of his improvement periods. Contrary to petitioner's argument that he was successfully visiting with his children and participating in services, the record shows that he consistently failed to comply throughout the proceedings below. Petitioner left two drug rehabilitation programs without authorization, was arrested and incarcerated at various times throughout his improvement periods, moved to another state, and failed to visit with the children or participate in services for months at a time. Further, petitioner tested positive for cocaine at the two hearings prior to his dispositional hearing. While petitioner argues that he needed more time to correct the conditions of abuse, he completely ignores the fact that he was given extensive time and resources during his two improvement periods and extensions that stretched over the course of two years, well beyond the time constraints set forth in West Virginia Code § 49-4-610(9).

Based upon the evidence presented, the circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect and that termination was necessary for the children's welfare. Pursuant to West Virginia Code § 49–4-604(c)(3), a situation in which there is no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected include one in which "[t]he abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts[.]" We have held that "[t]ermination . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected." Syl. Pt. 7, in part, *In re Katie S.*, 198 W.Va. 79, 82, 479 S.E.2d 589, 592 (1996).

Given all of the evidence, the circuit court did not err in terminating petitioner's parental, custodial, and guardianship rights and denying him an extension of his post-dispositional improvement period. The record demonstrates that there was no reasonable likelihood that petitioner could correct the conditions of abuse in the near future and that the children's welfare necessitated termination. The children were removed from petitioner's custody in March of 2015 and he was granted a post-adjudicatory improvement period beginning in September of 2015. Petitioner consistently failed to comply with services, visited his children sporadically, at best, absconded from two rehabilitation programs, and was periodically incarcerated throughout the proceedings. Despite his failures, the circuit court extended his post-adjudicatory improvement period and eventually granted him a post-dispositional improvement period, causing the

proceedings to continue for over two years and leaving the children in foster care and without permanency for nearly twenty-nine months. Petitioner's argument that he simply needs more time to correct his abusive behavior is highly unpersuasive in light of the many opportunities afforded to him during the proceedings below. Accordingly, we find no error.

For the foregoing reasons, we find no error in the decision of the circuit court, and its August 17, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**:  February 23, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker