479 S.E.2d 589

**In re KATIE S. and David S.**

**No. 23584.**

Supreme Court of Appeals of West Virginia.

Submitted Oct. 1, 1996.

Decided Nov. 14, 1996.

Keith White, Bryant & White, St. Marys, for Christina B., Respondent Below, Appellant.

Ann Fowler, Assistant Prosecuting Attorney for Wood County, Parkersburg, for West Virginia Dept. of Health and Human Resources, Petitioner Below, Appellee.

Joseph P. Albright, Jr., Parkersburg, Guardian Ad Litem for Katie and David S.

RECHT, Justice: [1]

Christina B.,[2] the mother of Katie and David S., appeals the termination of her parental rights by order of the Circuit Court of Wood County. On appeal, Christina B. (the respondent) argues the following: (1) the evidence was insufficient to terminate her rights; (2) the circuit court erred in affording her only a seven-month improvement period rather than the ordered. twelve-month improvement period; (3) the circuit court erred in opting for adoption of the children rather than long term foster care; and (4) the circuit court erred in failing to consider her disability. Based on our review of the record, we find no error in the circuit court's decision to terminate the respondent's parental rights. Although we affirm that portion of the circuit court's decision, we note that the circuit court failed to consider whether post-termination visitation between the respondent and her children is in the best interest of the children. We reverse the denial of visitation and remand for a hearing to determine whether such visitation is appropriate under *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

## I.

## FACTS AND BACKGROUND

On September 26, 1994, the Department of Health and Human Services (hereinafter the Department) filed a juvenile neglect and delinquency petition[3] against Christina B., alleging that she abused or neglected her children, Katie S., who was born on April 28, 1989 and was then five years old, and David S., who was born on May 29, 1993 and was then sixteen months old, within the meaning of W. Va.Code, 49–1–3 (1994).[4] The petition also sought to terminate the parental rights of the children's father, David S., whose ad-

---

1. The Honorable Arthur M. Recht resigned as Justice of the West Virginia Supreme Court of Appeals effective October 15, 1996. The Honorable Gaston Caperton, Governor of the State of West Virginia, appointed him Judge of the First Judicial Circuit on that same date. Pursuant to an administrative order entered by this Court on October 15, 1996, Judge Recht was assigned to sit as a member of the West Virginia Supreme Court of Appeals commencing October 15, 1996 and continuing until further order of this Court.

2. We follow our traditional practice in cases involving sensitive facts and use initials to identify the parties rather than their full names. *See In re Jeffrey R.L.*, 190 W.Va. 24, 435 S.E.2d 162 (1993).

3. W. Va.Code 49–6–1(a) (1992) states, in pertinent part:

If the state department or a reputable person believes that a child is neglected or abused, the department or the person may present a petition setting forth the facts to the circuit court in the county in which the child resides, or to the judge of such court in vacation. The petition shall be verified by the oath of some credible person having knowledge of the facts. The petition shall allege specific conduct including time and place, how such conduct comes within the statutory definition of neglect or abuse with references thereto, any supportive services provided by the state department to remedy the alleged circumstances and the relief sought. Upon filing of the petition, the court shall set a time and place for a hearing and shall appoint counsel for the child.

4. W. Va.Code 49–1–3(a) (1994) provides the following definition of an "abused child:"

"Abused child" means a child whose health or welfare is harmed or threatened by:

(1) A parent, guardian or custodian who knowingly or intentionally inflicts, attempts to inflict or knowingly allows another person to inflict, physical injury or mental or emotional injury, upon the child or another child in the home; or

(2) Sexual abuse or sexual exploitation; or

(3) The sale or attempted sale of a child by a parent, guardian or custodian in violation of section sixteen [§ 48–4–16], article four, chapter forty-eight of this code.

In addition to its broader meaning, physical injury may include an injury to the child as a result of excessive corporal punishment.

W. Va.Code 49–1–3(g)(1994) provides the following definition of a "neglected child:"

(1) "Neglected child" means a child:

(A) Whose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care or education, when such refusal, failure or inability is not due primarily to a lack of financial means on the part of the parent, guardian or custodian; or

(B) Who is presently without necessary food, clothing, shelter, medical care, education or supervision because of the disappearance or absence of the child's parent or custodian;

(2) "Neglected child" does not mean a child whose education is conducted within the provisions of section one [§ 18–8–1], article eight, chapter eighteen of this code.

dress was listed as "unknown." The petition alleged the following:

(1) In August 1994, Katie S., left without supervision, was riding her bicycle in the middle of a street, and the child's location was unknown to her mother;

(2) On August 29, 1994, David S. was hanging out and could have fallen out of a second story window when he was left unsupervised by his mother. On that same day, David S. crawled onto the porch and almost fell off the porch;

(3) Between July 1994 and September 1994, David S. was crying and screaming when left unsupervised in his home while his mother remained in bed;

(4) In September 1994, Katie S. missed almost all of the first two weeks of school because of untreated head lice. Her mother failed and refused to treat the child for head lice, and finally, the school personnel had to cut Katie's hair;

(5) The respondent failed routinely to provide breathing treatments necessary to treat David S.'s asthmatic condition;

(6) Because the respondent failed or refused to provide adequate food, the neighbors frequently had to feed the children; and,

(7) In 1990 and 1991, Katie S. was frequently absent from home, and the respondent did not know where the child was.

At a hearing on October 5, 1994, the respondent, who was represented by counsel, told the circuit court that she did not contest the allegations in the petition. The circuit court, after finding Katie and David S. to be abused and neglected by the respondent, granted her an improvement period of twelve (12) months. Also attending the hearing was the children's father; however, even though the father had little contact with his children, he was not found to have abused or neglected his children. Although the order granted an improvement period "to the respondent-parents," rehabilitation efforts centered entirely on the mother, and the record does not show any further involvement by the father. At the final hearing, the father did not appear but his appointed counsel did. The circuit

court found because of the father's abandonment, he was "not a proper party" and dismissed him.

On October 28, 1994, the Department prepared a family case plan outlining tasks for the respondent to complete during the improvement period to achieve the final goal of changing her behavior toward her children. During the first part of the improvement period, while the children remained outside the home, the respondent was to attend parenting classes, write reports, participate in counseling, read a parenting book, establish a residence and demonstrate an improvement in her parenting skills. During the first six months, the children visited with their mother in her home some several times with some overnight visits.

Although there is a dispute about the degree of successful completion of these activities by the respondent in the first six months of the improvement period, on June 8, 1995, Katie and David S. were returned to their mother's care. According to Christine Spiker, a licensed social worker with the Department's child protective services who worked with the respondent and her children, after the children were returned home, the Department began receiving numerous complaints alleging that the mother was neglecting the children. On June 15, 1995, Ms. Spiker visited the home, which she found to be "undescribably dirty, if extremely cluttered," and found the children to be disheveled, unkept and dirty. The kitchen which "appeared to have not been cleaned for several days" had a "pot on the stove that had mold growing on it." The pot was identified by the respondent as a "dinner that had been fixed the night after the children had been returned home, which would have been a week" earlier.

Ms. Spiker testified that she returned to the home at least six more times between June 15 and June 26, 1995. According to Ms. Spiker, she would find the respondent lying on the couch and the children complaining of hunger. Ms. Spiker said she had to coerce the respondent into fixing breakfast for her children. When questioned about feeding her children, the respondent answered that she "some times [sic]" fed the

children. On June 26, 1995, Ms. Spiker removed the children from the home.

For the three weeks immediately after the removal of the children, the respondent did not request any visits with her children. Between June 26, 1995 and October 15, 1995, the respondent visited her children only four or five times, and during the month before the November 15, 1995 hearing, the respondent made ·no inquiry about her children.[5]

The respondent maintains that she loves her children and does not want to have her parental rights terminated. Although the Department maintains that the respondent's efforts were not meaningful and ceased when the children were returned to the home, the respondent notes that she completed the tasks assigned during the first part of her improvement period and that the children were not malnourished. However, the respondent acknowledged that she did not feed her children regularly, but only "some times [sic]." Christopher Rutherford, a counselor who began working with the respondent on June 22, 1995 when the children were living with the respondent, thought that the drug treatment for her epilepsy could have made her appear listless. Mr. Rutherford, who had never visited the home or met the children, thought that the respondent, who had suffered abuse and neglect as a child, was making a sincere effort to get her children back. Mr. Rutherford thought that the respondent's counseling would take several months, but had not formulated an opinion on whether she had shown an improvement in her ability to be a responsible and successful parent during the five months he worked with her.

At the conclusion of the hearing, counsel for the respondent requested she be allowed the remaining time of the twelve-month improvement period to show an improvement or "to find one of the grounds less than termination." Joseph P. Albright, Jr., Esq., guardian-ad-litem for the children, thought that there was no "harm in continuing the improvement period ... [because] it is a short period of time."

The circuit court rejected any additional improvement period, finding that the respondent's improvement period continued after her children were removed so that the improvement period was a full year and that there was no evidence that the additional time would show any improvement. It is not disputed that except for the respondent's personal counseling with Mr. Rutherford and four or five visits with her children, between June 26, 1995 and November 15, 1995, the respondent made no effort to have her children returned to her.

Emphasizing the welfare of these very young children, the respondent's failure to show any improvement when her children were returned to the home and no showing of "a substantial likelihood of improvement or correction of the conditions within a short period," the circuit court ordered the termination of her parental rights. The circuit court also denied the respondent visitation with her children, but allowed the Department to grant visitation. The record does not indicate if any post-final order visitation has occurred.

This appeal followed, asserting several errors by the circuit court including insufficient evidence, failure to provide a full twelve-month improvement period, failure to consider long term foster care, and failure to consider the respondent's medical problems.

## II.

## DISCUSSION

### A. *Termination*

#### 1. Parental Rights of the Father

■ Before discussing the errors raised by the respondent concerning the termination of her parental rights, we note that no action was taken concerning the parental rights of the children's father, David S. Even though the evidence strongly suggests that the father abandoned his children and has no interest in their well-being, he was dismissed as "not a proper party." The Department's abuse and neglect petition named the father and stated that he "provides neither financial

5. The record indicates that between June 26, 1995 and November 15, 1995, Christina B. lived

within a mile of where the parent/child visits occurred.

nor emotional support for Katie and David, does not provide them with supervision or for any of the physical or material needs, and has only occasional contact with them." The father was served by publication [6] and appeared at the first hearing, where counsel was appointed to represent him. Although counsel for the father appeared at the final hearing, the father did not, and counsel for the father indicated that he had never talked to the father.

At the end of the hearing, even though the mother's parental rights were terminated, the status of the children was left dangling because of the father's dismissal. Apparently, the issue of the father's rights was left to be addressed in an adoption proceeding.[7]

Recently, in *In re Christina L., supra,* we strongly indicated that a natural parent, who has abandoned the children, should be included in abuse and neglect petitions. We again emphasize that the practice of waiting until adoption proceedings to determine the status of such a parent's parental rights, leaves "the children in 'No Man's Land' with regard to any resolution in their lives," may discourage persons who want to adopt the children, and leaves "the validity of a future adoption subject to challenge" (when due process has not been afforded to a natural parent). *In re Christina L.,* 194 W.Va. at 455–56, 460 S.E.2d at 701–2.

■ "Abandonment of a child by a parent(s) constitutes compelling circumstances

sufficient to justify the denial of an improvement period." Syl. pt. 2, *James M. v. Maynard,* 185 W.Va. 648, 408 S.E.2d 400 (1991); see also *In re Christina L.,* 194 W.Va. at 455–56, 460 S.E.2d at 701–2.

■ When the Department has a situation in which apparently one parent has abused or neglected the children and the other has abandoned the children, both allegations should be included in the abuse and neglect petition filed under W. Va.Code 49–6–1(a) (1992). Every effort should be made to comply with the notice requirements for both parents. To the extent that *State ex rel. McCartney v. Nuzum,* 161 W.Va. 740, 248 S.E.2d 318 (1978), holds that a noncustodial parent can be found not to have abused and neglected his or her child it is expressly overruled. The circuit court should, as required by W. Va.Code 49–6–2(d) (1996), "to the extent practicable, . . . give . . . [abuse and neglect cases] priority over any other civil action before the court, except proceedings under article two-a [§ 48–2A–1 et seq.], chapter forty-eight of the code and actions in which trial is in progress" and consider timely the allegations of abuse or neglect and also the allegation of abandonment.[8] We emphasize delay in achieving a permanent home for children can be devastating. "Unjustified procedural delays wreak havoc on a child's development, stability and security." Syl. pt. 1, in part, *In Interest of Carlita B.,* 185 W.Va. 613, 408 S.E.2d 365 (1991). These concerns for a timely disposi-

6. W. Va.Code 49–6–1(b) (1992) states:

The petition and notice of the hearing shall be served upon both parents and any other custodian, giving to such parents or custodian at least ten days' notice, and notice shall be given to the state department. In cases wherein personal service within West Virginia cannot be obtained after due diligence upon any parent or other custodian, a copy of the petition and notice of the hearing shall be mailed to such person by certified mail, addressee only, return receipt requested, to the last known address of such person. If said person signs the certificate, service shall be complete and said certificate shall be filed as proof of said service with the clerk of the circuit court. If service cannot be obtained by personal service or by certified mail, notice shall be by publication as a Class II legal advertisement in compliance with the provisions of article three [§ 59–3–1 et seq.], chapter fifty-nine of this

code. A notice of hearing shall specify the time and place of the hearing, the right to counsel of the child and parents or other custodians at every stage of the proceedings and the fact that such proceedings can result in the permanent termination of the parental rights. Failure to object to defects in the petition and notice shall not be construed as a waiver.

7. The circuit court's order terminated the parental rights of the mother, who although unable to care for her children, loved them and wanted them, but left intact the parental rights of the father, who, according to the petition, provided nothing for the children and only had occasional contact with them.

8. Rule 8 of the Rules on Time Standards for Circuit Courts further instructs circuit courts expeditiously and timely to process and dispose of abuse and neglect proceedings.

tion of allegations of abandonment, promoted our holding in Syl. pt. 6 of *Christina L.,* which states:

> When the West Virginia Department of Health and Human Resources seeks to terminate parental rights where an absent parent has abandoned the child, allegations of such abandonment should be included in the petition and every effort made to comply with the notice requirements of W.Va. Code, 49-6-1 (1992).

*See In the Matter of Brian D.,* 194 W.Va. 623, 637, 461 S.E.2d 129, 143 (1995).

In the case *sub judice,* the circuit court should have considered the allegation that the father had abandoned his children when the abuse and neglect petition was presented. Delaying a determination on the issue of the father's abandonment allows this matter to linger while Katie and David S. remain in foster care, a situation we found "ludicrous" in *Christina L.* 194 W.Va. at 456, 460 S.E.2d at 702. When the circuit court conducts a hearing on post-termination visitation (*see infra* section B), the issue of the father's parental rights should also be considered. Every effort should be made to comply with the notice requirements of W. Va.Code 49-6-1 (1992) and counsel should, if necessary, be appointed to represent the father. The status of these two young children needs to be resolved, without any unnecessary delay.

### 2. Parental Rights of the Mother

▉ Recently, in Syl. pt. 1 of *In Interest of Tiffany Marie S.,* 196 W.Va. 223, 470 S.E.2d 177 (1996), we stated our standard of review in an abuse and neglect case:

> Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has

been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

Based on this blend of deferential-plenary standards of review, we find that the circuit court was not clearly erroneous or wrong as a matter of law in terminating the parental rights of the respondent.

▉ In her appeal, the respondent asserts that the evidence was insufficient to terminate her parental rights. Although the respondent, as a parent, has substantial rights which must be protected, the primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children. First, we note that the evidence of abuse and neglect must be clear and convincing. Syl. pt. 3 of *In re Jeffrey R.L.,* 190 W.Va. 24, 435 S.E.2d 162 (1993), states:

> Parental rights may be terminated where there is clear and convincing evidence that the infant child has suffered extensive physical abuse while in the custody of his or her parents, and there is no reasonable likelihood that the conditions of abuse can be substantially corrected because the perpetrator of the abuse has not been identified and the parents, even in the face of knowledge of the abuse, have taken no action to identify the abuser.

*In accord* Syl. pt. 6, *W.V. Dept. of Health and Human Resources ex rel. Wright v. Doris S.,* 197 W.Va. 489, 475 S.E.2d 865 (1996).

▉ In this case, the respondent did not contest the allegations of abuse and neglect contained in the petition. *See supra* at pp. 83–84, 479 S.E.2d at pp. 593–94, listing the petition's allegations. After the respondent had participated in various activities designed to assist in improving her parenting skills, her two young children were returned to her custody. However, the mother was still unable to care for the basic needs of these children including washing, supervising

and feeding them regularly. The circuit court heard extensive testimony from Ms. Spiker, the Department's child protective service worker who visited the home more than six times after custody was returned to the mother. Ms. Spiker reported that the children were disheveled, unkept, and dirty, and that the children complained of hunger. The home was cluttered, dirty, and even had mold growing in a pot on the stove. Ms. Spiker said that she had to coerce the respondent into fixing breakfast for her children. The mother admitted that she "some times [sic]" fed her children but did not believe the children to be malnourished.

The respondent argues that there was insufficient "evidence of specific instances which demonstrate why . . . [her] parental rights should be terminated." However, the record shows: first, that the respondent did not contest the allegations of abuse and neglect in the petition which outlined several individual incidents; second, that the Department's social worker testified to the condition of the children and their home after they were returned to the mother; and finally, that the respondent presented no evidence that she had properly cared for the children when they were returned to her (she acknowledged that she did not feed the children regularly).

Based on the record, we find that the circuit court's finding of clear and convincing evidence of abuse and neglect was not clearly erroneous. Left to the mother's devices and child-rearing techniques, unencumbered by repeated inspections by the Department, the likelihood is very real that the health and welfare of both children was imperiled. Our primary goal in such matters must be the best interests of the child. We have reviewed the entire record and are not "left with the definite and firm conviction that a mistake has been committed." Syl. pt. 1, in part, *In Interest of Tiffany Marie S., supra.* We note that the circuit court heard the witnesses and, therefore, is better able than this Court to make credibility determinations. We find no merit in the respondent's claim of insufficient evidence of abuse and neglect.

 The respondent alleges that although a twelve-month improvement period had been ordered, her improvement period effectively lasted only seven months.[9] The respondent maintains that after the Department removed her children on June 26, 1995, they stopped working with her, even though no official termination of the improvement period occurred. In essence, the respondent's improvement period argument is based on the assumption that with an additional four months, her parenting skills would improve.[10] W. Va.Code 49–6–5(a)(6) (1996) provides that termination of parental rights is appropriate when "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future, and when necessary for the welfare of the child . . . ." W. Va.Code 49–6–5(b) (1996) defines "no reasonable likelihood that conditions of neglect or abuse can be substantially corrected" means that "based upon the evidence before the court, the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect, on their own or with help."

In this case, after the June 26, 1995 removal of the children, the respondent made very little effort to even see her children. Although able to continue with personal counseling, the respondent did not discuss the removal of her children with the counselor. Even though the counselor, Christopher

---

9. In 1996, the Legislature amended W. Va.Code 49–6–5(c) to allow "parents or custodians an improvement period not to exceed six months." Previously W. Va.Code 49–6–5(c) (1992) allowed a circuit court the option of ordering up to a twelve-month improvement period. *See also* W. Va.Code 49–6–2(b) (1996) allowing the court to "grant any respondent an improvement period in accord with the provisions of this article." Previously, W. Va.Code 49–6–2(b) (1992) "allowed an improvement period of three to twelve months . . ."

10. The respondent's third assignment of error is that the circuit court erred in not ordering long term foster care. This assignment is based on the assertion that the respondent would return to a normal functional level after a few months of treatment. Because this same assertion of a brief recovery period is also the base of her improvement period extension argument, we consider the two assignments together.

Rutherford, testified that the mother was attending sessions and was making a sincere effort to get her children back, after over four months of counseling, he thought "it is too early to tell" if any progress had occurred. Neither had the counselor formed an opinion "as to whether or not she has shown an improvement in her ability to be a responsible and successful parent during the time" he worked with her.[11] The focus of the counselor's testimony was not on the respondent's relationship with her children, but on her own problems.

In Syl. pt. 2 of *In re Lacey P.*, 189 W.Va. 580, 433 S.E.2d 518 (1993), we discussed the length of an improvement period and when termination is appropriate by stating:

> Neither W.Va.Code Sec. 49-6-2(b) nor W.Va.Code Sec. 49-6-5(c) mandates that an improvement period must last for twelve months. It is within the court's discretion to grant an improvement period within the applicable statutory requirements; it is also within the court's discretion to terminate the improvement period before the twelve-month time frame has expired if the court is not satisfied that the defendant is making the necessary progress. The only minimum time period set forth in the statute is the three-month period granted in the pre-dispositional section, W.Va.Code Sec. 49-6-2(b).[12]

■■■ The respondent's assertion that long term foster care is the best option for these young children is also without merit because the respondent failed to show that she would in the future be able to care for her children. Syl. pt. 1 of *In re Jeffrey R. L.*, 190 W.Va. 24, 435 S.E.2d 162 (1993) states:

> "Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, *W.Va.Code*, 49-6-5 [1977] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under *W.Va.Code*, 49-6-5(b) [1977] that conditions of neglect or abuse can be substantially corrected." Syllabus Point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

■■■ Given the lack of any evidence showing a reasonable likelihood of improvement, we find no error in the circuit court's refusal to extend the respondent's improvement period or to order long term foster care. We have long held that mere speculation of parental improvement was insufficient where the children's welfare is seriously threatened. Syl. pt. 1 of *In re Lacey P.*, 189 W.Va. 580, 433 S.E.2d 518 (1993) states:

> " '[C]ourts are not required to exhaust every speculative possibility of parental improvement before terminating parental rights where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close

---

11. The respondent cited the following testimony as showing that the conditions of abuse and neglect would be corrected in "a few months:"

Q. (Judge Hill) Has she shown any improvement in *her* emotional problems; that is, have you noticed any progress in curing what you have diagnosed HER problems are?

A. (Christopher Rutherford) I think it is too early to tell.

Q. Not yet, then?

A. Right.

Q. How long do you project that it would take to cure her emotional problems so that she is at least functionally normal?

A. It depends what theory or philosophy you go with.

Q. What do you mean?

A. Some people say eight sessions. Some people say one to four years. It just depends.

Q. Is it in the range of months rather than weeks?

A. I think it would be in the range of several months, yes.

Q. More than a year?

A. That I can't say.

Q. Well, you don't have any estimate, then, as to how many months?

A. *I can't make an accurate one, no.*

Q. Not even an educated estimate?

A. An educated guess, I would have to assume, that, probably, after several months of structured time with the client, intensive services, that she ought to be able to make her way.

Q. Some people say it might take four years?

A. Well, it depends. . . .

(Emphasis added.)

12. *See supra* note 9 for statutory changes.

interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements.' *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980)." Syllabus point 1, *Interest of Darla B.*, 175 W.Va. 137, 331 S.E.2d 868 (1985).

In this case, the respondent had an adequate period to demonstrate if, with reasonable help, she was capable of caring for her young children. The evidence of an amelioration of the conditions which lead to the abuse and neglect is too speculative given that the respondent was unable feed, supervise or wash her young children.

The respondent's argument concerning the stoppage of services by the Department after the children were removed, is based on the assumption that the Department, and not the mother, has the responsibility for initiating contact after the children were removed. Although the Department is required "to make reasonable efforts to reunify a family" (W. Va.Code 49–6–12(i) (1996)), the parents or custodians have the responsibility "for the initiation and completion of all terms of the improvement period." W. Va.Code 49–6–12(d) (1996).[13] In the four months between the removal of the children and the circuit court's final hearing, the respondent failed to do anything to pursue her improvement program; in fact, she only visited her children six times, even though she lived within a mile of where the visits occurred.[14] Given the evidence, we find that the circuit court did not abuse its discretion in refusing to extend the improvement period or to order long term foster case based upon the speculation

of about a forthcoming resolution of the respondent's personal problems.[15]

Finally, the respondent maintains that the circuit court erred in terminating her parental rights because she suffers from a disability. We note that the issue of the respondent's disability was not presented to the court below. We have long been reluctant to consider such matters. *See Whitlow v. Bd. of Educ. of Kanawha County*, 190 W.Va. 223, 226, 438 S.E.2d 15, 18 (1993); *Shrewsbury v. Humphrey*, 183 W.Va. 291, 395 S.E.2d 535 (1990); *Cline v. Roark*, 179 W.Va. 482, 370 S.E.2d 138 (1988).

In this case, the record fails to show a relationship between her medical condition, epilepsy treated by Depakote, and her behavior toward the children. The respondent did not testify about her medical condition or any effect caused by her medication. The record does include some speculation by Mr. Rutherford, the respondent's counselor, that her medication may make her listless because of general knowledge he gained from talking to some nurses and because the medication made a different client of his listless. Because of the lack of factual development below, we decline to address this disability issue, which was raised for the first time on appeal. *See Whitlow v. Bd. of Educ. of Kanawha County, supra.*

### B. *Post–Termination Visitation*

After the circuit court determined that the respondent's parental rights should be terminated, counsel for the respondent requested visitation for the respondent pending appeal. The request was denied without a hearing, and the idea of post-termination

---

**13.** In its entirely, W. Va.Code 49–6–12(d) (1996) provides:

When any improvement period is granted to a respondent pursuant to the provisions of this section, the respondent shall be responsible for the initiation and completion of all terms of the improvement period. The court may order the state department to pay expenses associated with the services provided during the improvement period when the respondent has demonstrated that he or she is unable to bear such expenses.

**14.** We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in deter-

mining the parent's potential to improve sufficiently and achieve minimum standards to parent the child. *See In Interest of Tiffany Marie S.* 196 W.Va. at 228 and 237, 470 S.E.2d at 182 and 191; *State ex rel. Amy M. v. Kaufman*, 196 W. Va. at 259, 470 S.E.2d at 213.

**15.** The respondent also argues that four months is a short time and therefore, it should be routinely granted. This "why not" argument for additional time in an abuse and neglect case fails to realize a child's need for permanency. *See* Syl. pt. 1, *Carlita B., supra* ("[u]njustified procedural delays wreak havoc on a child's development, stability and security"); *In the Matter of Brian D.*, 194 W.Va. 623, 461 S.E.2d 129 (1995); *In Interest of Tiffany Marie S., supra.*

visitation was summarily dismissed with the comment, "Termination means termination." During oral argument before this Court, Mr. Albright, guardian ad litem for the children, said that although David S., who was only sixteen months when the abuse and neglect petition was filed, had no bond with his mother, Katie S. has emotional ties to her mother.[16] Mr. Albright said that Katie S. has "love and affection" for her mother and was unable to visit with her mother.

In *Christina L.*, we noted that circuit court should be aware that post-termination visitation, either with siblings or parents, may be in the best interest of the child, especially when there is a close bond and the child maintains love and affection for either her siblings or parents. Where no bond exists, the consideration of post-termination visitation is not required. Syl. pt. 5 of *Christina L.*, states:

> When parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest.

*See State ex rel. Amy M. v. Kaufman*, 196 W.Va. 251, 260, 470 S.E.2d 205, 214 (1996) (post-termination visitation should be allowed if it is in the children's best interest and "would not unreasonably interfere with their permanent placement").

Because it is argued that Katie S. has a bond with the respondent and continues to feel love and affection for her, the circuit court should conduct a hearing pursuant to *In re Christina L., supra*, to determine if continued visitation or other contact between the respondent and Katie S. would be detrimental to Katie S.'s well being and if the visitation would be in Katie S.'s best interest. On remand, the circuit court should take evidence and hear arguments from all sides on the post-termination visitation between Katie S. and the respondent.

For the above stated reasons, the decision of the Circuit Court of Wood County is affirmed, in part, reversed, in part, and remanded for proceedings consistent with this opinion.

Affirmed, in part, reversed, in part, and remanded.

ALBRIGHT, J., deeming himself disqualified, did not participate in this decision.

---

16. We note with approval that the guardian ad litem for the children appeared before this Court for oral argument and was able to answer several questions concerning the interests of the children. The record indicates that the guardian ad litem has been diligent in protecting his clients' interests below. We continue to emphasize that guardians ad litem have a *duty* to represent fully represent the child's appellate rights, if an appeal is necessary. In *Matter of Scottie D.*, 185 W.Va. 191, 198, 406 S.E.2d 214, 221 (1991), we stated:

> It is well established that "[a]fter judgment adverse to his ward, the guardian ad litem has the right to appeal and the duty to do so if it reasonably appears to be to the advantage of the minor[.]" *Robinson v. Gatch*, 85 Ohio App. 484, 487, 87 N.E.2d 904, 906 (1949). This is based upon the principle that a guardian *ad litem* has a duty to represent the child(ren) to whom he or she has been appointed, as effectively as if the guardian *ad litem* were in a normal lawyer-client relationship.

Part of the duty of appellate representation is the filing of appellate briefs, even when not invited to do so. In *Christina L.*, 194 W. Va. at 454, n. 7, 460 S.E.2d at 700 n. 7, we emphasized the duty of guardians ad litem to appear before this Court for oral argument, stating: "We again admonish guardians ad litem that it is their responsibility to represent their clients in every stage of the abuse and/or neglect proceedings." Part of this representation is to file an appellate brief to insure that their clients' interests are presented. The role of the guardian ad litem does not cease until permanent placement of the children occurs. Syl. pt. 5, *James M. v. Maynard, supra*.