**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**


*In re* **M.F.-1 and D.F.**

**No. 23-244** (Kanawha County 21-JA-36 and 21-JA-37)


**MEMORANDUM DECISION**


Petitioner Mother M.F.-2[1] appeals the Circuit Court of Kanawha County's March 16, 2023, order terminating her parental rights to M.F.-1 and D.F.,[2] arguing that the circuit court erred in finding that reasonable accommodations were provided in accordance with the Americans with Disabilities Act of 1990 ("ADA"), 43 U.S.C. §§ 12101 to 12213. Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In January 2021, the DHS filed a petition alleging that the petitioner's mental health issues, drug addiction, and homelessness prevented her from adequately caring for the children. Specifically, during the twin children's birth, the petitioner refused medical interventions stating that "she [did] not care if the babies lived or died." The petitioner also told hospital staff that she had schizophrenia with visual and auditory hallucinations; refused to take her medications; was homeless; and admitted to having a history of drug use, including methamphetamine and marijuana. The petitioner further told the staff that the voices in her head have told her to hurt herself and others. The petition also outlined the petitioner's significant mental health history, which included the filing of multiple mental hygiene petitions by her mother and medical professionals; treatment at the Cleveland Clinic in 2018 where she was prescribed anti-psychotic medication, but stopped the medication and was found nude, running in traffic; her statements to

---

[1] The petitioner appears by counsel Leah Perry Macia. The West Virginia Department of Human Services appears by counsel Attorney General Patrick Morrisey and Assistant Attorney General James Wegman. Counsel Rebecca Stollar Johnson appears as the children's guardian ad litem.

Additionally, pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e). Further, because the petitioner and one child share the same initials, we refer to them as M.F.-2 and M.F.-1, respectively.

doctors that she was twelve months pregnant in 2019 and wanted a cesarean section; and attempted suicide in 2020 because "the voices told her to kill herself."

An adjudicatory hearing was held in April 2021, during which the circuit court heard evidence consistent with the allegations in the petition. The circuit court found that the petitioner's mental health issues prevented her from appropriately parenting the children and threatened the children's health and welfare. As such, the circuit court found the children to be abused and neglected and adjudicated the petitioner as an abusing and neglecting parent. In November 2021, the petitioner submitted to a psychiatric and parental fitness evaluation. The doctor who conducted the evaluation diagnosed her with schizoaffective disorder, methamphetamine use disorder, benzodiazepine use disorder, and personality disorder. The doctor found her intellectual functioning to be average. The doctor opined that because the petitioner minimized her mental health symptoms and drug use, she was "not currently capable of functioning as a parent."

At the dispositional hearing in July 2022, the circuit court heard testimony about the petitioner's nonparticipation in services, disinterest in the children, and lack of communication with the DHS. A service provider testified that the petitioner refused to drug screen and stopped participating in parenting classes. The service provider further testified that the petitioner was provided extra accommodations to ensure she had access to the services. Specifically, the curriculum for the parenting class was modified and slowed down, and steps were taken to ensure the petitioner remained engaged during the class. The service provider explained that they also made extra home visits, phone calls, and text messages in attempts to contact the petitioner. A DHS worker then testified that the DHS aided the petitioner in obtaining her medication and securing housing to help her comply with services. Testimony was also elicited from the children's foster mother concerning the petitioner's interaction with and interest in the children. She explained that the petitioner had one in-person visit and one video call with the children during the entirety of the proceedings, despite being offered monthly visits and weekly video calls. The foster mother also stated that she sent the petitioner photographs of the children and an invitation to their birthday party, all of which went unacknowledged.

After considering all of the evidence, the circuit court found that the petitioner's "behavior posed a significant risk of danger to the children." Specifically, the circuit court based this finding on the petitioner's past failure to acknowledge she was pregnant with M.F.-1 and D.F., which resulted in a failure to obtain appropriate medical care; testimony about the petitioner hearing recurring voices in her head compelling her to hurt others; the findings and recommendations of the parental fitness evaluator; the petitioner's history of involuntary hospitalizations and substance abuse; the circuit court's observations of the petitioner during hearings while she was unmedicated; and Facebook messages introduced at a prior hearing with a photo of the petitioner holding a butcher knife to her face. The circuit court further found that the petitioner "failed to engage in and actively participate in the services recommended by the parental fitness evaluation" and that she "remains unable to function effectively as a parent." In addition, the circuit court found that the DHS's accommodations complied with statutory requirements to make reasonable efforts in accordance with the ADA to accommodate the petitioner's mental illness and that the petitioner was afforded meaningful access to reunification and family preservation services. For those reasons, the circuit court found that the petitioner could not correct the underlying conditions of abuse and neglect and that termination was necessary for the children's welfare. Accordingly, the

circuit court terminated the petitioner's parental rights.[3] It is from the dispositional order that the petitioner appeals.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, the petitioner argues that the circuit court erred in finding that the DHS made reasonable accommodations in accordance with the ADA to allow the petitioner meaningful access to reunification and family preservation services.[4] West Virginia Code § 49-4-604(c)(5)(C) requires an order terminating parental rights to state, among other things, "[w]hether or not the department made reasonable accommodations in accordance with the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, et seq., to parents with disabilities in order to allow them meaningful access to reunification and family preservation services." We find that the record supports the circuit court's finding that the petitioner's mental illness was reasonably accommodated in accordance with the ADA. Specifically, the service provider implemented modifications to the parenting class and increased attempts and methods of contacting the petitioner. The DHS aided the petitioner in obtaining medication and housing. The petitioner was also given direct access to the foster mother for ease in communication with or regarding the children. Unfortunately, the petitioner showed no interest in the children or stabilizing her mental illness. *See In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996) ("We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." (citations omitted)). Furthermore, not once during the pendency of the proceedings did the petitioner indicate that she needed additional accommodations or request accommodations that were denied by the DHS. Therefore, we find no error.

---

[3] The unknown father's parental rights were also terminated. The permanency plan for the children is adoption in their current placement.

[4] We note that the petitioner supports her argument by contending that the DHS did not comply with this Court's holding in syllabus point 4, *In re Billy Joe M.*, 206 W. Va. 1, 521 S.E.2d 173 (1999), that termination of parental rights where allegations of neglect are made against the parent based on their *intellectual incapacity* should only occur after a "thorough effort to determine whether the parent[] can adequately care for the children with intensive long-term assistance." However, we also note that the intellectual incapacity at issue in that case concerned the parents functioning in the fourth and first percentiles for IQ scores. *Id.* at 3 n.1, 521 S.E.2d at 175 n.1. On the contrary, we have since declined to consider mental health issues to be an intellectual incapacity such that *In re Billy Joe M.* is applicable. *See In re Z.H.*, No. 16-0624, 2017 WL 75970 at *2 (W. Va. Jan. 9, 2017) (memorandum decision) ("There is no indication . . . that petitioner's mental health issues are equivalent to an intellectual incapacity as contemplated in *In Re: Billy Joe M.*"). Regardless, the Court in *In re Z.H.* went on to find that, even if *In re Billy Joe M.* applied, the petitioner therein received three years of services with no improvement. *Id.* at *3. Similarly, the record here establishes that the circuit court, in compliance with *In re Billy Joe M.*, concluded that the DHS "attempt[ed] to develop a plan for intensive long-term assistance," but that the petitioner's refusal to participate in services rendered it ineffective. Accordingly, even if *Billie Joe M.* were to apply, the petitioner would be entitled to no relief.

We further conclude that the circuit court correctly found there was no reasonable likelihood the petitioner could substantially correct the conditions of abuse and neglect in the near future and that termination of her parental rights was necessary for the children's welfare— findings that the petitioner does not challenge on appeal. *See* W. Va. Code § 49-4-604(c)(6) (permitting circuit court to terminate parental rights upon finding no reasonable likelihood that the conditions of neglect can be substantially corrected in the near future and when necessary for the child's welfare). Accordingly, termination of the petitioner's parental rights was appropriate.

For the foregoing reasons, the circuit court's March 16, 2023, order is hereby affirmed.

Affirmed.

**ISSUED**: September 24, 2024

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn