**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **J.B. and A.B.**

**No. 24-633** (Wirt County CC-53-2023-JA-8 and CC-53-2023-JA-9)

**MEMORANDUM DECISION**

Petitioner Father D.B.[1] appeals the Circuit Court of Wirt County's October 1, 2024, order terminating his parental rights to J.B. and A.B., arguing that the circuit court erred in finding that the DHS made reasonable efforts to preserve the family after the multidisciplinary team ("MDT") failed to hold a required meeting prior to disposition.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In May 2023, the DHS filed an abuse and neglect petition, alleging, in pertinent part, that the parents failed to provide necessary food, clothing, shelter, and bedding for the children, J.B. and A.B.[3] Specifically, the DHS alleged that the home was unfit for the children as it was dirty, cluttered to the extent that certain areas in the house were inaccessible, and the house had no electricity. The DHS further alleged that the children's bedroom was filled with trash, liquor bottles, and other miscellaneous objects.

At the adjudicatory hearing in October 2023, the petitioner stipulated that he had failed to provide adequate housing and was thereby adjudicated an abusing and neglecting parent to both children. The petitioner was then granted a post-adjudicatory improvement period, which required him to, among other things, attend all MDT meetings and hearings, participate in parenting classes, attend scheduled visitation with the children, obtain a safe and stable residence for the children, submit to a parental fitness evaluation, participate in therapy sessions, and keep in contact with his case workers.

---

[1] The petitioner appears by counsel Michael D. Farnsworth Jr. The West Virginia Department of Human Services ("DHS") appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Andrew T. Waight. Counsel Katrina Christ appears as the children's guardian ad litem ("guardian").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

[3] The mother's parental rights to the children were also terminated at the dispositional stage of the proceedings below. The mother is not a party to this appeal.

1

At a status hearing in February 2024, the DHS informed the court that the petitioner had failed to maintain contact with his assigned DHS worker, was not participating in therapy sessions, had failed to obtain a stable home environment for the children as the residence did not have electricity or water service, and was generally combative with service providers. As a result, the court found that the petitioner was not substantially compliant with the terms of his improvement period. Despite this noncompliance, the court ordered the DHS to continue providing services to the petitioner.[4]

Subsequently, in April 2024, the mother obtained a domestic violence protective order against the petitioner, alleging that the petitioner was harassing her. As a result, the petitioner was required to vacate the home he shared with the mother, leaving him without a residence. He then reportedly reached out to his DHS worker, asking what he needed to accomplish to regain custody of his children. The worker referred him to the terms and conditions of his improvement period and directed him to contact his attorney. No MDT meeting was held to discuss this new development. Later that month, the petitioner was arrested for violating the protective order after attempting to contact the mother at her residence. At a May 2024 hearing, the court ordered that an MDT meeting be held to discuss disposition in the matter and also suspended visitation with the children due to the petitioner's failure to attend several scheduled visits. Subsequently, the DHS submitted a report to the court stating that the petitioner failed to attend three separate appointments without notifying service providers beforehand, resulting in his discharge from services.

At the dispositional hearing in September 2024, the DHS presented evidence of the petitioner's overall noncompliance with the terms of his improvement period, which included his failure to participate in services or visitation since April 2024, inconsistent contact with his assigned case worker, and lack of progress in maintaining a safe and stable home for the children as he had been required to vacate his residence with the mother. Additionally, the DHS admitted that an MDT meeting had not taken place since April 2024, despite the court's order in May 2024. Nonetheless, the court found that although no MDT was held, an MDT meeting would not have changed the outcome of the case. In considering the evidence, the court found that there was no reasonable likelihood that the conditions of abuse or neglect could be substantially corrected in the near future. It further found that termination was necessary for the children's welfare as they required permanency. Lastly, the court found that the DHS made reasonable efforts in preserving the family as it offered "[p]arental [f]itness [e]xaminations, transportation to and from service providers, parenting classes, supervised visitation, assistance with utilities in the home, adult life skills classes consisting of budget planning and job application assistance, alcohol and drug abuse screening and rehabilitation services, and individual therapy." Accordingly, the court terminated the petitioner's parental rights to J.B. and A.B. The petitioner now appeals from the court's dispositional order.

_____

[4] It is unclear whether the court formally terminated the petitioner's improvement period at the February 2024 hearing. The court's order memorializing the February 2024 hearing provided that the improvement periods "shall cease;" however, the court's September 2024 dispositional order provided that the petitioner's improvement period "is hereby terminated." Regardless, the February 2024 order clearly required the DHS to continue providing services to the petitioner.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). The petitioner first argues that it was error for the court to terminate his parental rights after the MDT failed to hold a required meeting prior to disposition. The petitioner correctly points out that, by failing to meet, the MDT violated the circuit court's order, Rule 51(c) of the West Virginia Rules for Child Abuse and Neglect Proceedings, and West Virginia Code § 49-4-405(d).[5] However, the circuit court specifically considered the MDT's noncompliance in this respect and found that one more MDT meeting would not have "change[d] anything or help[ed] the children" in this case, as the petitioner "made little or no effort" to participate in services throughout the entirety of his six-month improvement period. The record clearly demonstrates that, from early in the petitioner's improvement period, he failed to participate in services, attend scheduled visits with the children, maintain contact with his assigned case worker, and obtain a proper residence for the children. We therefore find, under the limited circumstances of this case, that the MDT's failure to hold an additional meeting did not constitute error such that vacation of the dispositional order is warranted. Accordingly, the petitioner is entitled to no relief on this basis.

Next, the petitioner argues that the court erred in terminating his parental rights because there was insufficient evidence to support the finding that the DHS made reasonable efforts to preserve the family. We disagree. Under West Virginia Code § 49-4-604(c)(6)(C)(iii) and (iv), when terminating parental rights, the court's order must address whether the DHS made reasonable efforts to preserve the family. Here, the court made the appropriate findings upon ample evidence. Specifically, the DHS offered the petitioner a plethora of services including parental fitness exams, parenting classes, supervised visitation, adult life skills classes consisting of budget planning and job application assistance, and individual therapy. All these services supported the goal of reunification. Accordingly, there was sufficient evidence for the court to find that the DHS made reasonable efforts to preserve the family. To the extent that the petitioner argues that this Court should reweigh the evidence, we note that the weighing of evidence is the exclusive task of the circuit court as the finder of fact and will not be disturbed on appeal. *See In re D.S.*, 251 W. Va. 466, --, 914 S.E.2d 701, 707 (2025) ("We . . . do not reweigh the evidence"). Therefore, we conclude that the circuit court did not err in finding that the DHS made reasonable efforts to preserve the family.

Further, the evidence strongly showed the petitioner's history of noncompliance with the DHS's services, resulting in his discharge from services. Additionally, the petitioner's failure to attend scheduled visits with the children resulted in the court suspending visitation. We have repeatedly highlighted that a parent's level of interest in visiting the children when outside the petitioner's custody "is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996) (citations omitted). The record also reflects that the petitioner failed to improve the housing conditions that led to the abuse and neglect petition,

---

[5] Both Rule 51(c) of the Rules of Procedure for Child Abuse and Neglect Proceedings and West Virginia Code § 49-4-405(d) require the MDT to meet "at least every three months" until the case is dismissed from the court's docket.

instead showing a decline in progress as he remained without a proper residence at the time of disposition. As such, the court had ample evidence to find that there was no reasonable likelihood that the petitioner could substantially correct the conditions of abuse and neglect in the near future and that termination of his rights was necessary for the children's welfare. We have consistently held that these findings permit circuit courts to terminate parental rights. *See* W. Va. Code § 49-4-604(c)(6) (permitting termination of parental rights "[u]pon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future and, when necessary for the welfare of the child"); Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (permitting termination of rights "when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected." (quoting Syl. Pt. 2, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980))).

For the foregoing reasons, we find no error in the decision of the circuit court, and its October 1, 2024, order is hereby affirmed.

Affirmed.

**ISSUED**: November 4, 2025

**CONCURRED IN BY**:

Justice C. Haley Bunn
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Senior Status Justice John A. Hutchison

**NOT PARTICIPATING:**

Chief Justice William R. Wooton

4