**STATE OF WEST VIRGINIA**

*In re* **D.T.**

**No. 24-592** (Ohio County CC-35-2021-JA-58)

**FILED**

**November 12, 2025**
**released at 3:00 p.m.**
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father O.T.[1] appeals the Circuit Court of Ohio County's September 4, 2024, order terminating his parental, custodial, and guardianship rights (collectively "parental rights") to the child, D.T.[2] On appeal, the petitioner argues that the circuit court erred by terminating his parental rights rather than employing a less restrictive alternative, such as a post-dispositional improvement period. Upon our review, we determine that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

The DHS filed its initial petition in May 2021, alleging that the petitioner, who resided in Georgia at the time of removal, had abandoned his then three-year-old daughter and failed to protect her from the abusive and neglectful actions of her mother and stepfather.[3] The DHS filed an amended petition in August 2021, further alleging that the petitioner's absence had deprived the child of necessary food, clothing, shelter, medical care, education, and supervision. In January 2022, the petitioner appeared telephonically at the adjudicatory hearing and stipulated to his failure

---

[1] The petitioner appears by counsel Richard W. Hollandsworth. The West Virginia Department of Human Services appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Lee Niezgoda. Because a new Attorney General took office while this appeal was pending, his name has been substituted as counsel. Counsel Michael B. Baum appears as the child's guardian ad litem ("GAL").

Additionally, pursuant to West Virginia Code section 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

[3] The proceedings below concerned additional children and respondents not involved in this appeal. As a result of the proceedings, the biological mother's parental rights to D.T. were terminated in December 2021.

1

to protect the child. The court adjudicated the petitioner on that basis,[4] and the petitioner requested a post-adjudicatory improvement period.

In March 2022, the circuit court granted the petitioner's request for a post-adjudicatory improvement period. However, more than a year elapsed before an agreement was reached concerning the improvement period's terms.[5] The petitioner relocated to Pennsylvania and then Florida following his adjudication, and according to the DHS, "it took some time to locate him again." When the improvement period commenced in June 2023, its terms required the petitioner, among other things, to participate in two supervised video calls with the child each week, to drug screen every fourteen days, and to travel to West Virginia for an in-person visit with the child in August 2023. The petitioner was also required to notify the DHS of the date on which he intended to make his August 2023 visit by mid-July 2023.

At a status hearing in September 2023, the DHS informed the circuit court that the petitioner had failed to visit his daughter in August 2023. The petitioner did not attend the status hearing but was represented by counsel, who claimed that the petitioner was unable to travel due to medical issues. The DHS also reported that the petitioner was participating in only one video call with his daughter per week rather than two calls, as required by the terms of his improvement period. In November 2023, the DHS filed a status update with the court in which it further alleged that the agency had not received any results from the biweekly drug screenings the petitioner was required to complete. The petitioner filed his own status update in response, in which he claimed that he had been drug screening with "LabCorp in Florida and did not realize that the results were not being forwarded to the [DHS]," assuring the court that he would obtain and submit the missing results. The petitioner also alleged that he was medically restricted from traveling long distances by ground transportation and, though not restricted from flying, could not "afford to pay for a flight, a rental car and lodging to appear in court or to visit with his daughter personally." Subsequently, the DHS filed a motion to set the case for disposition.

The circuit court conducted a dispositional hearing in May 2024. During the hearing, the court heard testimony from a Child Protective Services ("CPS") worker, who testified that the petitioner had failed to satisfy the terms of his improvement period. Specifically, the CPS worker alleged that the petitioner had not visited his daughter once during the course of the proceedings and that the petitioner had failed to submit evidence that he had completed any of his required drug screenings. A CPS supervisor also testified to the petitioner's failure to comply with the terms of his improvement period, opining that the most significant issue in the case was "the lack of any in person relationship" between the petitioner and the child, since the petitioner did not visit the child in person and the child's only recent interactions with the petitioner had been through video calls. The supervisor observed that the child had remained in her foster placement for several years and that the foster family had become "her family" and source of stability. The child's foster mother

---

[4] The petitioner did not include either the adjudicatory order or a transcript from the adjudicatory hearing in the appendix record; however, all parties agree that adjudication occurred, and the petitioner does not challenge the sufficiency of his adjudication on appeal.

[5] In May 2022, the case was transferred to a different circuit judge.

also testified during the hearing, confirming that the child had become very bonded with the foster family during the three-year foster placement and expressing her desire to adopt the child.

The petitioner, who traveled from Florida to attend the dispositional hearing in person, testified that he had custody of the child until she was eighteen months old, when he was incarcerated for a probation violation arising out of Maine. The petitioner described having limited contact with the child following his incarceration. The petitioner stated that he had begun to experience significant medical issues in November 2021 and, since then, had been hospitalized numerous times for diabetes, vascular disease, and osteomyelitis. The petitioner testified that he had been unable to work due to his medical issues and that his entire monthly income consisted of his Social Security disability benefits. The petitioner explained that he had relocated several times during the proceedings to stay with relatives who could assist him with his medical issues—first residing in Georgia, then in Pennsylvania, and finally in Florida, where he continued to reside with his fiancée.

During his testimony, the petitioner claimed that he did not visit the child in August 2023 due to his medical issues and that he could not afford the cost of the trip once he was medically cleared to travel. The petitioner admitted that he did not drug screen every fourteen days during his improvement period; however, he blamed his noncompliance on the DHS's failure to arrange for him to screen at a facility in Florida.[6] The petitioner claimed that he had completed some required drug screenings at a physician's office but mistakenly believed the physician was sharing the results with the DHS.[7] The petitioner concluded his direct testimony by declaring that he would be willing to do "whatever was necessary" to be reunified with his daughter now that his health conditions had improved. Following the dispositional hearing, the petitioner filed a motion with the circuit court requesting a post-dispositional improvement period.

The circuit court entered its dispositional order on September 4, 2024. Based on the evidence presented in the dispositional hearing, the court found that the petitioner had failed to comply with the terms of his improvement period or to demonstrate his ability to provide for the child's needs. The court explained that the petitioner "did not visit with his daughter in person at all during this case, even as ordered in August 2023 or after that; . . . did not consistently maintain contact with his daughter through video calls; . . . [and] did not provide evidence of random drug screens every 14 days." The court concluded that there was no reasonable likelihood that the conditions of abuse or neglect could be substantially corrected in the near future, as the petitioner was not "present to protect [the child] from the abuse and neglect of the mother" and "has not been present throughout this case . . . ." Additionally, the court found that the child did not know the petitioner and was "uncomfortable around him," such that returning the child to his custody "would

_____

[6] According to the circuit court's October 2023 order, memorializing a June 2023 status hearing, the court directed the DHS to find an agency in Florida to drug screen the petitioner and to pay for the screenings.

[7] At the dispositional hearing, the petitioner's attorney proffered, and the court accepted as true, that the attorney had received the results from four drug screenings the petitioner had completed during his improvement period. According to the attorney, all four screening results were negative, except for the presence of prescribed oxycodone.

be very upsetting to the child." The court also found that the child had been in foster care for over three years and was bonded with the foster family. Therefore, the court concluded that termination of the petitioner's parental rights was necessary for the child's welfare. It is from this dispositional order that the petitioner now appeals.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T*., 228 W. Va. 89, 717 S.E.2d 873 (2011). On appeal, the petitioner asserts the following assignments of error:[8] 1) that the circuit court abused its discretion and committed clear error by terminating the petitioner's parental rights instead of granting him a post-dispositional improvement period; 2) that termination of the petitioner's parental rights was not the "least restrictive thing the court could have done" in this case; and 3) that there was no "serious threat to the welfare of the child" to justify termination of the petitioner's parental rights. In response, the DHS and GAL both argue that the circuit court properly terminated the petitioner's parental rights and urge this Court to affirm the court's dispositional order.

We first turn to the petitioner's argument that the circuit court abused its discretion by terminating his parental rights rather than granting him a post-dispositional improvement period. We have previously explained that "the granting of an improvement period is within the circuit court's discretion," and an improvement period need not be granted when no improvement is likely. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002). Moreover, West Virginia Code section 49-4-610(3)(D) limits a court's discretion to grant a post-dispositional improvement period when, as here, a parent has previously participated in an improvement period. In such cases, a parent must demonstrate that he "has experienced a substantial change in circumstances" since the initial improvement period, and "due to that change in circumstances, [he] is likely to fully participate in the [additional] improvement period" before the court may grant one. *Id.* Critically, the petitioner has not argued, below or on appeal, that he experienced a substantial change in circumstances following his post-adjudicatory improvement period that would make him likely to succeed in an additional improvement period. Instead, the petitioner contends that his failure to complete his post-adjudicatory improvement period was due to circumstances beyond his control.

In response, the DHS argues that a post-dispositional improvement period was not a viable option in this case, since the petitioner did not meet the statutory eligibility criteria in West Virginia Code section 49-4-610(3)(D). The DHS further contends that a post-dispositional improvement period would have violated West Virginia Code section 49-4-610(9), which prohibits any combination of improvement periods that results in a child remaining in foster care for more than fifteen of the most recent twenty-two months unless the court finds "compelling circumstances by clear and convincing evidence that it is in the child's best interests to extend [those] time limits . . . ." The DHS also refutes the petitioner's attempt to deflect responsibility for his

---

[8] Although the petitioner lists five assignments of error at the outset of his brief, we find that he abandoned those assignments of error in the remainder of his brief. Because this Court does not consider "issues . . . mentioned only in passing [or those that] are not supported with pertinent authority" on appeal, we limit our review to the issues presented in the argument section of the petitioner's brief. *See State v. LaRock*, 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996).

noncompliance with the terms of his post-adjudicatory improvement period, noting that the circuit court specifically considered the petitioner's medical and financial circumstances but was not convinced that his noncompliance could be attributed to those factors.

We agree with the DHS's position that a post-dispositional improvement period was not appropriate in this case. The petitioner did not demonstrate, and has not argued, that he experienced a substantial change in circumstances following his post-adjudicatory improvement period that would make him likely to successfully complete an additional improvement period. *See* W. Va. Code § 49-4-610(3)(D). Nor did the circuit court find "compelling circumstances by clear and convincing evidence that it [was] in the child's best interests" to remain in foster care beyond the statutory time limits in West Virginia Code section 49-4-610(9). Yet, the petitioner suggests that these statutory prerequisites should not apply to him, arguing that circumstances beyond his control were to blame for his noncompliance during the post-adjudicatory improvement period. We find no merit to his argument.

While the DHS "is obligated to make reasonable efforts to reunify the family," consideration must also be given to the petitioner's "role in the proceedings and [his] response" to DHS efforts. *See In Int. of Carlita B.*, 185 W. Va. 613, 627-28, 408 S.E.2d 365, 379-80 (1991). Indeed, West Virginia Code section 49-4-610(4)(A) makes clear that "the respondent [to an abuse and neglect proceeding, who is granted an improvement period] shall be responsible for the initiation and completion of all terms of the improvement period." As such, it was the petitioner's responsibility to satisfy the terms of his post-adjudicatory improvement period, and we find no error in the circuit court's determination that his noncompliance cannot be attributed to circumstances beyond his control. As the circuit court explained in its dispositional order, it was "highly patient with [the petitioner], and if he had problems that prevented him from complying with the improvement plan, those problems should have been presented to his counsel, who would have brought them to the [c]ourt's attention." Had the petitioner communicated his medical or financial limitations to the court as they arose, the court could have fashioned any number of accommodations, such as modifying the terms of the improvement period or compelling the DHS to provide financial assistance or other services. Yet the record reflects, on multiple occasions, that the petitioner waited until he was out of compliance with the terms of his improvement period to inform the court of his issues. We therefore conclude that the court acted within its discretion when it declined to grant the petitioner's motion for a post-dispositional improvement period.

We next turn to the petitioner's argument that the circuit court erred in terminating his parental rights, because termination of parental rights was not the "least restrictive thing the court could have done." In response, the DHS asserts that the court was not obligated to employ a less restrictive alternative, having found no reasonable likelihood the petitioner could substantially correct the conditions of abuse and neglect in the near future. Indeed, this Court has consistently held that

> [t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code section 49-4-604,] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code section 49-4-604(c)(6)] that conditions of neglect or abuse can be substantially corrected.

5

Syl. Pt. 2, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980). West Virginia Code section 49-4-604(d) provides that there is "no reasonable likelihood that conditions of neglect or abuse can be substantially corrected" when "based upon the evidence before the court, the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." The statute specifies that such a situation exists when "[t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts . . . ." W. Va. Code § 49-4-604(d)(3).

Here, the circuit court found that the petitioner failed to follow through with the terms of his improvement period—a finding that is well-supported by the record of this case. The court also found that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected in the near future. As we have explained, "the level of interest demonstrated by a parent in visiting his . . . children while they are out of [his] custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996) (citations omitted). We therefore conclude that the court was not required to employ a less restrictive dispositional alternative to termination of the petitioner's parental rights.

Finally, we address the petitioner's contention that there was no serious threat to the welfare of the child to justify termination of his parental rights. Conversely, the DHS and GAL argue that the child's best interests necessitated termination, as the child had already spent a significant amount of time in her foster placement at the time of disposition and needed permanency. We once again reiterate that "[t]he controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, in part, *In re B.H.*, 233 W. Va. 57, 754 S.E.2d 743 (2014). In rendering its decision, the circuit court cited ample evidence in the record in support of its conclusion that further delaying the child's permanency would be contrary to her best interests. Specifically, the court pointed to the significant length of time the child had spent with her foster family and her need for a "stable, safe, and permanent home environment." The court also found that the child was very bonded to her foster family whereas she had no bond with the petitioner. Based on these findings, we conclude that the court did not err in terminating the petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 4, 2024, order is affirmed.

Affirmed.

**ISSUED**: November 12, 2025

**CONCURRED IN BY**:
Chief Justice William R. Wooton
Justice C. Haley Bunn
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Senior Status Justice John A. Hutchison