**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **L.H. and N.N.**

**No. 24-160** (Cabell County CC-06-2022-JA-153 and CC-06-2023-JA-81)

**MEMORANDUM DECISION**

Petitioner Mother J.N.[1] appeals the Circuit Court of Cabell County's February 20, 2024, order terminating her parental rights to L.H. and N.N.,[2] arguing that the court erred by terminating her parental rights without employing a less restrictive dispositional alternative. Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In October 2022, the DHS filed a petition alleging that the petitioner gave birth to L.H. after her parental rights had previously been terminated to another child in a separate proceeding. The basis of the prior termination was the petitioner's mental health issues, history of homelessness, and lack of basic parenting skills. Presently, the petitioner was unemployed; resided with the child's father, who was "strung out on meth," in a home that was in "horrible condition"; and had not addressed her mental health issues. When the child was removed, he was hungry and dirty, with an untreated rash.

The petitioner stipulated to these allegations at a hearing held in November 2022, and the circuit court adjudicated her as a neglecting parent. The court then granted the petitioner a post-adjudicatory improvement period. The petitioner's case plan included improvement period terms requiring her to submit to a parental fitness evaluation, drug screen, maintain employment and

---

[1] The petitioner appears by counsel Moriah N. Myers. The West Virginia Department of Human Services appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Heather L. Olcott. Because a new Attorney General took office while this appeal was pending, his name has been substituted as counsel. Counsel Krista Conway appears as the children's guardian ad litem.

Additionally, pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

stable housing, attend therapy sessions, visit the child, and participate in parenting and adult life skills education courses.

Then, in June 2023, the DHS filed an amended petition alleging that the petitioner gave birth to N.N. that month and that the same issues remained. Specifically, although the petitioner had been briefly employed as a store clerk, her employment was terminated when money was missing from her drawer. Furthermore, the apartment she recently obtained was "filthy," with cigarette butts, trash, and animal feces on the floor. The circuit court thereafter held a contested adjudicatory hearing on the amended petition. The petitioner testified, and when asked if she remembered her child's birthday, she said "it's been a very long time," which prompted the court to inquire whether she was under the influence. She denied the same and further denied using any illegal drugs. However, when asked if she used marijuana, she admitted that she used the drug "a week ago." In describing her living situation, the petitioner explained that she was renting a room in a house with four other adults and that her new boyfriend was paying the rent. When asked if it would be a safe place for a child, the petitioner said, "no." She further admitted to her recent loss of employment and that she had not made efforts toward reunification because she "was conflicted between [the father] and [her] children." A Child Protective Services ("CPS") worker also testified to the petitioner's failure to participate in her case plan and that only seven days prior to N.N.'s birth, she tested positive for codeine. The petitioner had otherwise missed fifty-five screens. Based on the testimony, the court once again adjudicated the petitioner as a neglecting parent. The petitioner thereafter filed a motion for an improvement period.

The circuit court proceeded to disposition in January 2024, at which time the petitioner was not present but was aware of the hearing and represented by counsel. The court heard testimony from a CPS worker who described the petitioner's lack of participation. Despite providing support to the petitioner by setting up visits with the children, writing letters for housing assistance, and supplying bus passes, the CPS worker stated that the petitioner "had been noncompliant" with the case plan. She missed a total of sixty-five drug screens, only submitting to one screen in June 2023 which was positive for opiates; failed to participate in visits, substance abuse treatment, therapy services, and parenting and adult life skills education; sporadically communicated with CPS; failed to obtain stable housing or employment; and failed to appear for three scheduled parental fitness evaluations. At the close of the evidence, counsel for the petitioner moved the court for a post-dispositional improvement period. The court denied the motion and terminated the petitioner's parental rights to both children, finding no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future, that it would be contrary to the children's welfare to return to her care, and that no alternative could assure the children's well-being. It is from the dispositional order that the petitioner appeals.[3]

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). The petitioner argues that the circuit court erred by terminating her parental rights without employing a less restrictive dispositional alternative. However, the petitioner ignores our prior holding that circuit courts may terminate parental rights

---

[3] The father's parental rights were terminated by the same order, and the permanency plan for the children is adoption by foster placement.

"without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)(6)] that conditions of neglect or abuse can be substantially corrected." Syl. Pt. 5, in part, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (quoting Syl. Pt. 2, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980)). The court specifically found that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected in the near future, and this finding is supported by the evidence in the record. While the petitioner may have shown some potential for improvement initially, she ultimately demonstrated a total disregard for these proceedings by failing to participate in the case plan, appear for the dispositional hearing, or visit her children, instead prioritizing her relationship with the father. In that regard, we have pointed out that "the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996) (citations omitted). The petitioner argues that the circuit court could have granted an additional improvement period as an alternative to disposition because "with additional time and proper assistance from the department, she could have successfully remedied the conditions." We disagree. West Virginia Code § 49-4-610(3)(D) allows circuit courts to grant an additional improvement period if "the respondent demonstrates that since the initial improvement period, the respondent has experienced a substantial change in circumstances." Upon our review, we see no change in circumstances, but rather the petitioner's persistent noncompliance with the DHS's reunification services. Furthermore, as we have stated, "courts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened." *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, Syl. Pt. 4 (quoting Syl. Pt. 1, in part, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980)). The court found that termination was necessary for the children's welfare, and we can discern no error in its decision under the circumstances.

Accordingly, we find no error in the decision of the circuit court, and its February 20, 2024, order is hereby affirmed.

Affirmed.

**ISSUED**: January 29, 2025

**CONCURRED IN BY**:

Chief Justice William R. Wooton
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice C. Haley Bunn
Justice Charles S. Trump IV