**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **H.A. and C.M.**

**No. 25-310** (Upshur County CC-49-2024-JA-26 and CC-49-2024-JA-27)

**MEMORANDUM DECISION**

Petitioner Mother S.A.[1] appeals the Circuit Court of Upshur County's April 14, 2025, dispositional order terminating her parental rights to H.A. and C.M., arguing that the court erred in doing so.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

The DHS filed a petition in June 2024 alleging that the petitioner made statements to a family member about self-harm and locked then-five-year-old H.A. in a bedroom by himself for approximately one hour. The DHS alleged that while the child was in the room, he tried to eat a glue mouse trap, which became stuck in his hair, requiring his head to be shaved. According to the DHS, when a Child Protective Services ("CPS") worker accompanied law enforcement on a welfare check, the petitioner denied that she locked H.A. alone in a room that day but admitted that she had locked the child in the bedroom a few days prior. CPS observed the bedroom the petitioner and C.M. shared, which was extremely cluttered and had multiple piles of feline vomit and feces. Additionally, H.A.'s bedroom had a strong smell of urine. It was also alleged that the petitioner told the CPS worker that she did not have a bond or connection with H.A. and that she wanted to give him up for adoption, but wanted to keep C.M. During this conversation, the petitioner never referred to H.A. by his name, but only as "that child" or "that one." The CPS worker also observed the petitioner's phone and saw texts from the petitioner's boyfriend calling H.A. several racial slurs. When the CPS worker spoke with H.A., the child stated that the petitioner also called him racial slurs. Additionally, H.A. mentioned a "switching stick," and when asked about this, the petitioner stated, "the only thing I beat that kid with is a belt." Shortly after, the court ordered the petitioner to participate in a forensic psychological evaluation of parental fitness.

In August 2024, the circuit court held an adjudicatory hearing, during which the petitioner stipulated to the allegations in the petition. Therefore, the circuit court found that the petitioner

---

[1] The petitioner appears by counsel Keith Skeen. The West Virginia Department of Human Services ("DHS") appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Wyclif Farquharson. Counsel Jamella L. Lockwood appears as the children's guardian ad litem.

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

1

abused and neglected the children due to her alienation and mental abuse of H.A. and that she subjected both children to deplorable living conditions. The petitioner was also granted supervised visitation with the children on the condition that she participate in drug screens and test negative for drugs and alcohol.

The dispositional hearing was continued four times between September 2024 and April 2025. In September 2024, the DHS requested and was granted a continuance because the petitioner's psychological evaluation had not been received. The petitioner was not present at this hearing, despite being represented by counsel. The dispositional hearing was continued three times between November 2024 and March 2025 because the petitioner failed to appear and the psychological evaluation remained outstanding. The circuit court held the final dispositional hearing in April 2025. The petitioner again was not present but was represented by counsel, who requested a fifth continuance because of the petitioner's absence, stating that the petitioner did not have adequate transportation. The DHS objected to the continuance, arguing that the petitioner had rescheduled the psychological evaluation three separate times, had not attended any multidisciplinary treatment team ("MDT") meetings, and had not drug screened consistently. The court denied the motion, finding that there was no good cause to continue the case, that the children needed permanency in a reasonable time frame, and that the petitioner had not availed herself of the proceedings. Therefore, the court proceeded to conduct the dispositional hearing.

First, a community corrections supervisor testified that the petitioner completed only two drug screens, one in June 2024 and one in August 2024. However, the petitioner should have participated in approximately one drug screen per week in accordance with the court's prior order. During this witness's testimony, the petitioner's counsel provided the results from three additional drug screens that the petitioner completed at a different facility shortly before the dispositional hearing. The DHS stipulated to the admission of these drug screen results which showed that the petitioner tested negative for drugs and alcohol on March 19, 2025, March 31, 2025, and April 2, 2025. Next, a visitation provider testified that the petitioner never visited with the children and did not respond to the provider's multiple attempts to contact her. As a result, the petitioner was dismissed from the provider for noncompliance. Thereafter, the petitioner reached out to the provider for the first time in October 2024 and asked for visitation with the children. The provider directed the petitioner to speak with the DHS and did not hear from the petitioner again. Next, the petitioner's parenting and adult life skills provider testified that the petitioner was somewhat compliant with the services and that she participated in eleven of sixteen sessions. However, all of the sessions occurred in the petitioner's car because the petitioner did not want the provider to enter her home. The provider testified that, although the petitioner was participating in the sessions, she was unable to see if the petitioner was incorporating or understanding the parenting techniques because she was not visiting with the children. Then, a CPS worker testified that the petitioner did not respond to his multiple attempts to contact her and that she did not attend any MDT meetings. Another CPS worker testified that she also tried to contact the petitioner multiple times to no avail until the day prior to the dispositional hearing, when she was able to speak with the petitioner on the phone. Additionally, the witness testified that the petitioner's psychological evaluation had been rescheduled to occur later in April. At the close of testimony, the DHS requested termination of the petitioner's parental rights.

2

In the resulting dispositional order, the circuit court found that the petitioner had not appeared before the court since her adjudication and made no effort to visit the children or drug screen between August 2024 and March 2025. Additionally, the petitioner only participated in some parenting classes and did not complete the ordered psychological evaluation, despite rescheduling it multiple times. As such, the court found that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the reasonably foreseeable future and that termination of the petitioner's parental rights was in the best interests of the children. Ultimately, the court terminated the petitioner's parental rights to H.A. and C.M. It is from the dispositional order that the petitioner appeals.[3]

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, the petitioner argues that the circuit court erred in terminating her parental rights.[4] It is well established that "[t]ermination of parental rights . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected." Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (quoting Syl. Pt. 2, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980)). According to West Virginia Code § 49-4-604(d)(3), a situation in which there is no such likelihood includes when "[t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts . . . designed to reduce or prevent the abuse or neglect of the child." Ample evidence was presented during the dispositional hearing to support the court's finding that there was no reasonable likelihood that the petitioner could substantially correct the conditions of abuse and neglect, as she failed to attend any hearing after adjudication and failed to complete required drug screens. Additionally, the petitioner failed to participate in the MDT meetings or complete the court-ordered psychological evaluation. She also failed to visit the children, and we have noted that "the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996) (citations omitted). In addition to finding that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected, the court found that termination of the petitioner's parental rights

---

[3] The permanency plan for H.A. is reunification with his father, K.S., who is participating in an improvement period. The permanency plan for C.M. is reunification with his nonabusing father, M.M., who is receiving reunification services.

[4] The petitioner also asserts that the circuit court wrongfully denied her an improvement period. However, the petitioner does not cite to or include a written motion for an improvement period in the record on appeal, nor does any such motion appear in the record. *See* W. Va. R. App. P. 10(c)(7) (requiring the petitioner's brief to include "citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal"). Further, as we have explained, "[a] circuit court may not grant an . . . improvement period . . . unless the respondent to the abuse and neglect petition files a *written* motion requesting the improvement period." Syl. Pt. 5, *State ex rel. P.G.-1 v. Wilson*, 247 W. Va. 235, 878 S.E.2d 730 (2021) (emphasis added). As such, the petitioner is entitled to no relief.

was in the children's best interests, a finding the petitioner does not challenge on appeal. Courts are permitted to terminate parental rights upon these findings. *See* W. Va. Code § 49-4-604(c)(6) (allowing a court to terminate parental rights "[u]pon a finding that there is no reasonable likelihood that the conditions of neglect or abuse and be substantially corrected in the near future and[] when necessary for the welfare of the child"). As such, we decline to disturb the circuit court's decision.[5]

For the foregoing reasons, we find no error in the decision of the circuit court, and its April 14, 2025, order is hereby affirmed.

Affirmed.

**ISSUED**: March 24, 2026

**CONCURRED IN BY**:

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Justice Gerald M. Titus III

---

[5] We note that the petitioner sets forth three additional assignments of error in her brief to this Court. However, in support of these assignments of error, the petitioner fails to cite to any governing authority and, therefore, also fails to present any argument applying that authority. With respect to these assignments of error, the petitioner has failed to comply with West Virginia Rules of Appellate Procedure. *See* W. Va. R. App. P. 10(c)(7) (requiring that a "brief must contain an argument clearly exhibiting the points of . . . law presented" and "cit[e] the authorities relied on"). Additionally, in an Administrative Order entered on December 10, 2012, Re: Filings that Do Not Comply With the Rules of Appellate Procedure, we specifically noted that "[b]riefs that lack citation of authority [or] fail to structure an argument applying applicable law" and "[b]riefs with arguments that do not contain a citation to legal authority to support the argument presented" are not in compliance with this Court's rules. In that order, this Court cautioned that "[p]ursuant to Rule 10(j), failure to file a compliant brief 'may result in the Supreme Court . . . imposing such other sanctions as the Court may deem appropriate.'" Accordingly, we decline to address these assignments of error.